John KAISER, Appellant,

v.

Forooz SAKATA; Body Ergonomics & Rehabilitation, Inc.; J. Michael James, M.D.; and Rehabilitation Medicine Associates, P.C., Appellees.

No. S–9618.

Supreme Court of Alaska.

Jan. 18, 2002.

Rehearing Denied Feb. 21, 2002.

John Kaiser, pro se, Anchorage, Appellant.

Michael R. Wirschem, Law Office of Paul D. Stockler, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

John Kaiser's medical malpractice claims were dismissed on summary judgment because he presented no expert affidavit to support his allegations. Kaiser argues that his failure to procure an expert witness arose from the superior court's failure to accurately advise him of his legal options. Because the superior court made adequate allowances for Kaiser's pro se status and did not err in the rulings challenged by Kaiser on appeal, we affirm the grant of summary judgment.

## II. FACTS AND PROCEEDINGS

John Kaiser was injured in a work-related accident in April 1995.[1] After initial treatment by Dr. Gary Child, Kaiser was treated

---

1. Because this case arises on an appeal from summary judgment, this statement of facts re- flects only Kaiser's allegations.

by Dr. J. Michael James from August 1995 to March 1996. On Dr. James's advice, Kaiser also participated in Body Ergonomics and Research (BEAR) physical therapy. Beginning in December 1995, Kaiser entered a "work hardening program" with Forooz Sakata and other therapists. Kaiser continued his therapy with Sakata until early spring of 1996.

According to Kaiser, the work hardening program was beyond his physical capacities and aggravated his pre-existing injuries. While he was participating in the program, he complained to Sakata about pain caused by his work on the treadmill, but she was unresponsive. When Kaiser finally stopped participating in the program and returned to his previous physician, Dr. Child found a difference in Kaiser's MRI results compared to a pre-BEAR-program MRI. Dr. Child concluded that Kaiser's "[h]erniated nucleus pulposa ... has gotten worse with time and perhaps the BEAR treatment."

Kaiser filed a complaint against James, Sakata, Body Ergonomics and Rehabilitation, Inc., and Rehabilitation Medicine Associates, P.C. in March 1998. He alleged that the defendants' negligence had caused him additional damage beyond his pre-existing work injuries.

In January 1999 the defendants moved for summary judgment. They argued that because Kaiser had failed to timely respond to discovery requests, the defense's requests for admission must be deemed admitted under Alaska Rule of Civil Procedure 36(a); as a result, they said, no issues of material fact existed to preclude summary judgment. At a hearing on this motion, Kaiser, representing himself, explained that he had not responded to discovery requests because of health complications and recent surgery. Superior Court Judge Eric T. Sanders granted him a thirty-day extension to respond to both the discovery requests and the motion for summary judgment. The court also asked Kaiser if he had consulted any experts concerning his claims and urged Kaiser to seek independent evaluation.

In the same hearing, Judge Sanders explained to the parties that the Alaska State Medical Association had indicated that it was currently unable to provide a medical malpractice panel. Based on this information, the parties waived appointment of a panel. The trial court asked Kaiser if he understood how the panel worked, and Kaiser answered that he knew "a little." The court then explained the panel's usual function and noted that "regardless of their opinion, the parties are still allowed to go ahead with the case" and go to trial. Defendants waived the panel. Kaiser asked the court what advantage it would be to him to have a panel. The court responded that it could not give him legal advice, but it told Kaiser that when a party in defendants' position waived appointment of a panel, the plaintiff would normally waive as well. "Basically," said the court, "if you want to get your case moving, the panel will slow things down." Kaiser agreed to waive the panel.

At the scheduled second hearing, the defendants argued that Kaiser had not adequately responded to discovery and that summary judgment was still appropriate based on defendants' original motion. The trial court chided Kaiser for his less-than-thorough compliance and explained to Kaiser the need to comply fully with discovery requests. At a subsequent hearing, the superior court denied the defendants' summary judgment motion, explaining that while Kaiser's discovery responses would have been inadequate coming from a trained attorney, the court accepted them under the more lenient standard applied to pro se litigants.

The defendants' attorney then informed the court and Kaiser that the defendants would next obtain an expert affidavit supporting the defendants' position; if this evidence remained undisputed, the defense planned to file a second motion for summary judgment. The trial judge explained to Kaiser in detail the legal implications of the expected second motion. He explained that Kaiser would need an expert of his own to offer countervailing testimony as to whether the standard of care had been met. Judge Sanders asked Kaiser if he understood this and explained that if Kaiser could not offer expert support for his claims, then the defendants would be entitled to summary judgment. The trial court stated that it was

placing Kaiser on notice about the upcoming need for an expert. It also urged Kaiser to find an expert as soon as possible in anticipation of the defense's motion, so that Kaiser would not need to seek extensions when his opposition to the motion came due.

The defendants obtained an expert affidavit stating that the standard of care had been met, and in October 1999 they filed a second motion for summary judgment. Kaiser again sought an extension for his response, and the court again granted him extra time. At the summary judgment hearing, however, Kaiser still had no expert witness to support his claim. Kaiser explained that he had spoken to one potential expert witness, but that the expert had been unable to assess Kaiser's claims because Kaiser did not have medical records of the defendants' treatment of him. However, Kaiser did not request assistance from the trial court in obtaining these documents. The court explained that, because the defendants' expert affidavit was unrebutted, summary judgment in their favor was legally required. The superior court granted the defendants' summary judgment motion. Kaiser now appeals.

## III. STANDARD OF REVIEW

We have explained the standard of review for summary judgment as follows:

We review summary judgments de novo, drawing all reasonable inferences in the nonmovants' favor and viewing all facts in the light most favoring them. We determine whether the parties genuinely dispute any facts; whether, if so, those facts are material to a viable legal theory; and, if not, whether the undisputed facts entitle the movant to judgment as a matter of law. Any dispute must not only be genuine and material, but arise from admissible evidence, such as affidavits recounting personal knowledge of specific facts.[2]

Whether expert testimony is required to show a breach of duty of care is a question of law to which we apply our independent judgment.[3]

## IV. DISCUSSION

A. The Superior Court Granted Kaiser the Leniency Appropriate to a Pro Se Litigant.

In cases involving pro se litigants, courts relax some procedural requirements. We have defined duties for both judges and the pro se litigants in such cases. The litigant is expected to make a good faith attempt to comply with judicial procedures[4] and to acquire general familiarity with and attempt to comply with the rules of procedure[5]—absent this effort, he or she may be denied the leniency otherwise afforded pro se litigants.[6]

Courts "hold the pleadings of pro se litigants to less stringent standards than those of lawyers," particularly where "lack of familiarity with the rules" rather than "gross neglect or lack of good faith" underlies litigants' errors.[7] Judges "should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish,"[8] and inform pro se litigants of specific defects in their pleadings.[9]

1. The superior court sufficiently advised Kaiser of the necessity of obtaining an expert affidavit in order to avoid summary judgment.

In Breck v. Ulmer, where a pro se litigant had lost on summary judgment, this court held that she "should have been advised of the necessity of submitting affidavits

2. Brady v. State, 965 P.2d 1, 8 (Alaska 1998).

3. See D.P v. Wrangell Gen. Hosp., 5 P.3d 225, 228 (Alaska 2000).

4. Wright v. Black, 856 P.2d 477, 480 (Alaska 1993), overruled on other grounds by B.E.B. v. R.L.B., 979 P.2d 514 (Alaska 1999).

5. Bauman v. State, Div. of Family & Youth Servs., 768 P.2d 1097, 1099 (Alaska 1989).

6. Noey v. Bledsoe, 978 P.2d 1264, 1270 (Alaska 1999).

7. Wright v. Shorten, 964 P.2d 441, 444 (Alaska 1998) (internal quotations and citations omitted).

8. Breck v. Ulmer, 745 P.2d 66, 75 (Alaska 1987).

9. See Collins v. Arctic Builders, 957 P.2d 980, 982 (Alaska 1998).

to preclude summary judgment." [10] In this case, the trial court advised Kaiser quite clearly that if he did not submit an expert affidavit to challenge the affidavit submitted by defendants, Kaiser would lose on summary judgment.

The trial judge warned Kaiser that the defendants were going to move for summary judgment. Once the defendants made this motion, the trial judge explained, "your opposition is going to be ... due pretty soon.... You're now getting notice, today on April 20th, that it's coming, and so I want you to go out and start making that effort so you do have that expert lined up by the time [the defendants make] that motion.... If you're unable to locate an expert who's going to back up your theory of liability, then [the defendants] are entitled to a summary judgment." Judge Sanders further reiterated, "what you need ... is ... countervailing expert testimony," and "you're going to need to have an expert that's going to [support your position]."

The trial court's warning to Kaiser regarding the need for an expert affidavit could not have been clearer. To the extent that Kaiser now challenges the adequacy of the trial court's guidance on this issue, his challenge fails.

### 2. The superior court sufficiently advised Kaiser about the role of the expert advisory panel.

■ Kaiser also argues that the superior court misled him as to the significance of the expert medical panel. The trial judge summarized the usual advisory role of the panel for Kaiser, told him that a plaintiff in his position might typically waive appointment of a panel if the defendant agreed to do so, and told him that appointing a panel would slow down the proceedings. Kaiser complains that the trial court did not warn him of the possibility that, if Kaiser were ultimately un-

able to find an independent expert to support his claims, the panel might still provide expert opinion in his favor and save him from summary judgment. The superior court did not err in failing to warn Kaiser of such a speculative eventuality. Advising litigants of every possible outcome of every decision is beyond the scope of the court's obligations to the pro se litigant. We have explained that "[t]o require a judge to instruct a pro se litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side;" [11] the same concern weighs against requiring a court to advise parties of potential long-term strategic implications of waiving a malpractice advisory panel.

### 3. The superior court was not obliged to assist Kaiser in requesting or moving to compel discovery.

■ Without discovery of his own medical records from defendants, Kaiser had little chance of obtaining an expert affidavit stating that defendants' treatment fell below the standard of care. Had Kaiser, as a pro se litigant, made a good faith effort to obtain discovery and informed the court of his difficulties, he might have been entitled to greater guidance from the court regarding the mechanics of the discovery process. However, there is no indication in the record that Kaiser ever requested copies of his medical records through discovery or otherwise. [12] And in the eight months between April, when the trial court "put [Kaiser] on notice" that the defendants would prevail on summary judgment unless Kaiser obtained an expert affidavit, and January, when the trial court granted summary judgment to the defendants, Kaiser never squarely raised the issue of his discovery difficulties before the court. We therefore conclude that the court's assistance to Kaiser was sufficient on the matter of discovery. [13]

10. *Breck,* 745 P.2d at 75.

11. *Bauman v. State, Div. of Family & Youth Servs.,* 768 P.2d 1097, 1099 (Alaska 1989).

12. The parties dispute what discovery requests Kaiser actually made. The record before us contains only blank, pre-printed discovery forms without specific requests for discovery.

13. *See Bauman* 768 P.2d at 1099 (holding that where a pro se litigant has failed to file at least a defective pleading, the court has no duty to help him).

**B.** *The Superior Court Was Not Obliged To Appoint an Advisory Panel.*

 Trial judges are not obliged to appoint advisory panels, but rather have discretion to determine whether a panel is necessary. Alaska Statute 09.55.536(a) states, "the court shall appoint ... a three-person expert advisory panel *unless the court decides that an expert advisory opinion is not necessary for a decision in the case.*" (Emphasis added.) In *Taylor v. Johnston,* we recognized that this statutory language is non-compulsory, and held that the "trial court has discretion to bypass this review process" if it deems the panel unnecessary.[14] We reject Kaiser's contention that the superior court violated a statutory obligation in failing to appoint a panel.[15]

**C.** *The Superior Court Appropriately Granted Summary Judgment.*

**1.** *Kaiser did not show that a genuine issue of material fact existed.*

 To defeat a motion for summary judgment under Alaska Civil Rule 56(e), a party

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must

set forth specific facts showing there is a genuine issue for trial.

Kaiser failed to offer affidavits or other evidence in support of his claim.[16] Because "undisputed facts entitle the movant to judgment as a matter of law," summary judgment was appropriate.[17]

Our decision in another malpractice case, *Kendall v. State, Division of Corrections,* supports the grant of summary judgment below, as well.[18] In *Kendall,* an expert advisory panel concluded that the standard of care had been met, and the trial court granted the defendant summary judgment based on this evidence.[19] We affirmed the grant of summary judgment because Kendall bore "the burden of demonstrating how she would prove her case. She presented no expert affidavits and did not show, based on the evidence that was presented, that a reasonably arguable case of medical negligence existed."[20] Kaiser's failure to support his claims is very similar to that of the plaintiff in *Kendall.* Therefore, the superior court properly granted summary judgment.

**2.** *The defendants' expert affidavit was sufficient under the governing statute to support summary judgment.*

 Kaiser argues that Dr. Roth's expert affidavit is insufficient to support sum-

---

**14.** 985 P.2d 460, 466 (Alaska 1999).

**15.** Kaiser also states without argument that failure to appoint a panel amounted to a violation of due process. As discussed above, Kaiser has no statutory right to an expert panel. He presents no argument why he should instead have a constitutional right to one. His due process claims are waived for insufficient briefing. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

In addition, Kaiser asserts that the legislature created malpractice panels in order to protect pro se litigants. Given the statute's plain language, legislative history is not a significant legal source for our analysis. *See Peninsula Mktg. Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991). However, it is noteworthy that no points of legislative intent listed by the legislature in enacting or amending AS 09.55.536 relate to protection of pro se litigants. *See* ch. 26, § 1, SLA 1997; ch. 177, § 1, SLA 1978; ch. 46, § 8, SLA 1982.

**16.** To support a malpractice claim under AS 09.55.540(a), Kaiser needed to show by a preponderance of evidence

(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

Although Dr. Child's notes indicate that BEAR *may* have caused Kaiser's injury, neither the notes nor anything else in the record fulfill the first two statutory requirements.

**17.** *Brady v. State,* 965 P.2d 1, 8 (Alaska 1998).

**18.** 692 P.2d 953 (Alaska 1984).

**19.** *Id.* at 955.

**20.** *Id.*

mary judgment under AS 09.20.185. Because he raises this challenge for the first time before this court, it is waived.[21] Moreover, it appears that Dr. Roth's affidavit does assert facts sufficient to qualify him as an expert under AS 09.20.185. According to Kaiser, the affidavit does not reflect whether Dr. Roth has the training or certification required by AS 09.20.185(a)(2) and (3).[22] However, Dr. Roth's affidavit specifically lists his training and certification:

1. I am a physician licensed to practice medicine in the State of California. . . . I have been board certified in physical medicine and rehabilitation since 1986.

2. I have been practicing physical medicine and rehabilitation since 1985. In addition to practicing, I also served as a clinical instructor.

D. *The Superior Court's Award of Attorney's Fees Did Not Violate Alaska Civil Rule 82.*

■ Kaiser argues that the defendants waived attorney's fees under Rule 82 by waiting more than ten days after entry of judgment to move for fees. However, Rule 82(c) specifies that "[f]ailure to move for attorney's fees within 10 days, *or such additional time as the court may allow,* shall be construed as a waiver of the party's right to recover attorney's fees." (Emphasis added.) Here, the superior court accepted the motion for attorney's fees despite the fact that it was one day late. This was well within the trial court's discretion,[23] and there is no indication the superior court abused that discretion. In arguing below that the fees motion was untimely, Kaiser did not explain how a one-day extension might prejudice him, and he discusses no prejudice on appeal. Moreover, the appellees assert on appeal that the superior court had granted Kaiser several extensions for filing pleadings and accepted his untimely motion for reconsideration a month after summary judgment was entered. Kaiser does not dispute this assertion in his reply brief. Therefore, the superior court's award of attorney's fees did not violate Rule 82.

## V. CONCLUSION

Because the record and law do not support Kaiser's arguments that the superior court erred in failing to appoint an advisory panel, granting summary judgment, or awarding attorney's fees, we affirm those decisions. We also conclude that the superior court granted Kaiser appropriate leniency and guidance in consideration of his pro se status. The decision of the superior court is therefore AFFIRMED.

BRYNER, Justice, not participating.

---

21. *See id.* (plaintiff waived her challenge to statutory adequacy of expert advisory panel's findings by not raising it before the trial court). Kaiser claims to have raised this objection below. But his previous objection was not based on AS 09.20.185; it was based on Alaska Civil Rule 72.1, the rule concerning expert advisory panel opinions.

22. AS 09.20.185 provides:
 (a) In an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness is
 (1) a professional who is licensed in this state or in another state or country;
 (2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and
 (3) certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue.
 (b) The provisions of (a) of this section do not apply if the state has not recognized a board that has certified the witness in the particular field or matter at issue.

23. Indeed, in *Gabaig v. Gabaig,* we held that where a trial court ordered a party to file attorney's fees motions within ten days, but the party did not file for thirty-seven days, the trial court did not abuse its discretion in nevertheless awarding that party attorney's fees. 717 P.2d 835, 840 (1986).