Lee LAWSON, Appellant,

v.

Ernest and Linda HELMER, Appellees.

No. S–10034.

Supreme Court of Alaska.

Sept. 26, 2003.

Lee Lawson, pro se, Juneau.

No appearance for appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

1. *See generally Lawson v. Reynolds*, Mem. Op. & J. No. 10053, 2002 WL 1486484 (Alaska July 10,

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Lee Lawson appeals the superior court's holding that his defamation claim against Ernie and Linda Helmer fails as a matter of law and the court's award of attorney's fees to the Helmers. We hold that the superior court correctly held that the Helmers' testimony and statements to a custody investigator are immunized from Lawson's derivative civil defamation suit. We affirm the superior court's dismissal of Lawson's claims and its award of attorney's fees to the Helmers.

## II. FACTS AND PROCEEDINGS

### A. Facts

Lee Lawson has known Ernie and Linda Helmer for over thirty years. Lawson and Ernie Helmer were best friends. Lawson and his former girlfriend, Tammy Reynolds, lived with the Helmers while Tammy was pregnant with his daughter Ariel. The Helmers were present when the child was born in January 1999, and consider themselves her "*de facto* grandparents." In May 1999 Lawson and Reynolds separated, thereafter engaging in a protracted child custody dispute.[1]

After Lawson's and Reynolds's separation, the relationship between Lawson and the Helmers deteriorated. Linda Helmer sought a long-term protective order against Lawson before Magistrate John W. Sivertsen, Jr. in November 1999. She testified that Lawson sexually assaulted her in 1991 or 1992 and had threatened her with violence on several occasions. Magistrate Sivertsen found by a preponderance of the evidence that Lawson committed a crime involving domestic violence against Linda Helmer and granted the protective order. The Helmers also became involved in the custody dispute before Superior Court Judge Patricia A. Collins. They testified in the custody dispute between Lawson and Reynolds and made statements to a court-appointed custody investigator who filed a report with the court. Over the

2002).

course of the custody proceeding (1) the Helmers testified at trial that prior to Ariel's birth, Lawson planned to kidnap Kevin, his son from a relationship with a former girlfriend, Valerie Lawson; (2) Ernie Helmer stated to the custody investigator that Lawson admitted to Ernie that he obtained an "X-rated" video of Valerie during their custody dispute over Kevin, by breaking into her storage locker; (3) Linda Helmer stated her opinion that a gunshot wound sustained by Lawson during his custody dispute with Valerie was probably self-inflicted; (4) Ernie Helmer stated to the custody investigator that Lawson had a handgun of the type used to inflict the gunshot wound and had asked Ernie not to tell anyone about it; and (5) Linda Helmer testified that Lawson sexually assaulted her in 1992.

The superior court entered its findings of fact and conclusions of law and a custody decree continuing joint legal custody and granting primary physical custody of Ariel to Reynolds in December 2000.[2] We upheld that decision.[3]

### B. Proceedings

Lawson sued the Helmers for defamation based on their statements during the custody proceedings before Judge Collins and the protective order proceedings before Magistrate Sivertsen. He claimed that the Helmers' statements on the above five subjects were false and defamatory. He sought nominal and punitive damages against the Helmers, as well as an order forbidding them from having any contact with Ariel.

On January 11, 2001 Judge Collins ruled that Lawson's claims fail as a matter of law.

2. *Id.* at *2.

3. *Id.* at *10.

4. *Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 841 (Alaska 2001) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

5. *Brandon v. Corrs. Corp. of Am.*, 28 P.3d 269, 273 (Alaska 2001) (quoting *Peter v. Progressive Corp.*, 986 P.2d 865, 867 (Alaska 1999)).

6. Lawson attempts to extend his defamation complaint in his appellate brief by asserting that the Helmers made "several false criminal allegations to many peers and government people." But Lawson's brief to the trial court claimed only

She also ordered him to pay the Helmers $6,174 in attorney's fees. Lawson appeals both the dismissal of his claims and the award of attorney's fees. The Helmers declined to file a brief.

### III. STANDARD OF REVIEW

■ We exercise our independent judgment when reviewing issues of law, " 'adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy.' "[4] The superior court's decision—that Lawson's claims fail as a matter of law due to the Helmers' witness immunity—concerns an issue of law that is subject to *de novo* review.

■ We also review constitutional questions *de novo.*[5]

### IV. DISCUSSION

### A. The Helmers' Testimony and Statements in Prior Judicial Proceedings Are Absolutely Privileged and the Helmers Are Accordingly Immune from this Action for Defamation.

■ Lawson asserts that the superior court's grant of immunity to the Helmers was improper, claiming that the court used immunity as a means to avoid admitting that it had made a mistake in the custody dispute after Lawson proved that the Helmers had committed perjury in that proceeding. Lawson misunderstands the superior court's application of absolute privilege and the resulting witness immunity for the Helmers' testimony and statements to the custody investigator.[6]

that the Helmers had defamed him through their testimony and statements to the custody investigator. Accordingly, the superior court's decision was confined to those allegations. Because Lawson failed to properly raise the Helmers' alleged defamation outside of the child custody and protective order proceedings, we will not consider it on appeal. We note that our decision in this case does not treat as privileged any defamatory statements by the Helmers that were unconnected to either the child custody or protective order proceedings.

As we said almost thirty years ago in *Nizinski v. Currington:* [7]

> The authorities are virtually unanimous that defamatory testimony by a witness in a judicial proceeding, which is pertinent to the matter under inquiry, is absolutely privileged. In such instances an action for libel or slander will not lie even though the testimony is given maliciously and with knowledge of its falsity.[8]

Because testimony that is pertinent to the matter under inquiry is absolutely privileged, the witness is immune from later suit.[9] The RESTATEMENT (SECOND) OF TORTS § 588 provides that:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which [the witness] is testifying, if it has some relation to the proceeding.[10]

 Even defamatory testimony is privileged, and the witness granted immunity, because of the public policy rationale that the privilege leads to more just trials by (1) encouraging more witnesses to come forward and (2) ensuring that witnesses will be more open and honest in testifying.[11] The widespread recognition of the privilege is predicated on the idea that parties are protected from witness misconduct by (1) their ability to reveal any deficiencies in testimony through cross-examination and (2) the threat of prosecution for perjury or other sanctions against the witness.[12]

While *Nizinski v. Currington* is dispositive of this case, our recognition of the privilege and resultant immunity from suit for defamation in *Zamarello v. Yale*[13] is also instructive here. In *Zamarello* we held that a party to a property dispute is immune from suit for slander or disparagement of title when the party files a quitclaim deed that has a "direct relation to [the] claim of an interest in the property." [14] In recognizing the privilege for the filing of a quitclaim deed related to judicial proceedings, *Zamarello* effectively adopted the RESTATEMENT (SECOND) OF TORTS § 587,[15] which provides:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of

---

7. 517 P.2d 754 (Alaska 1974).

8. *Id.* at 756 (citation omitted).

9. *Id.*

10. RESTATEMENT (SECOND) OF TORTS § 588 (1977).

11. *See, e.g., Briscoe v. LaHue,* 460 U.S. 325, 333, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (recognizing that without immunity "witnesses might be reluctant to come forward to testify" and that once "on the stand, his testimony might be distorted by the fear of subsequent liability," while holding that 42 U.S.C. § 1983 does not abrogate absolute witness immunity); *Couch v. Schultz,* 193 Mich.App. 292, 483 N.W.2d 684, 686 (1992) (stating that the privilege ensures "that participants in judicial proceedings are free to express themselves without fear of retaliation"); *Provencher v. Buzzell–Plourde Assocs.,* 142 N.H. 848, 711 A.2d 251, 255 (1998) (recognizing that "[t]he purpose of this privilege is to encourage witnesses to testify and to ensure that their testimony is not altered or distorted by the fear of potential liability"); *Binder v. Triangle Publ'ns, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (1971) (stating that immunity is extended "to witnesses to encourage their complete and unintimidated testimony in court"); *Deatherage v. State, Examining Bd. of Psychology,* 134 Wash.2d 131, 948 P.2d 828, 830 (1997) (recognizing that "the administration of justice requires witnesses in a legal proceeding be able to discuss their views without fear of a defamation lawsuit").

12. *See, e.g., Overman v. Klein,* 103 Idaho 795, 654 P.2d 888, 893 (1982) (stating that there is minimal need for civil defamation suits regarding statements made in course of judicial proceedings because witnesses are "subject to the rigors of cross-examination and the penalty of perjury"); *Binder,* 275 A.2d at 56 (recognizing that "the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings"); *Bruce v. Byrne–Stevens & Assocs. Eng'rs., Inc.,* 113 Wash.2d 123, 776 P.2d 666, 667 (1989) (stating that "witness'[s] reliability is ensured by [the] oath, the hazard of cross-examination and the threat of prosecution for perjury").

13. 514 P.2d 228 (Alaska 1973).

14. *Id.* at 231.

15. *Id.* at 230–31 (citing *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405, 409 (1956)).

or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

In sum, the Helmers' testimony and related statements made during the course of the prior litigation were absolutely privileged and the superior court correctly determined that the Helmers were immune from Lawson's defamation action.

### B. The Alaska and Federal Constitutions Do Not Require that the Helmers Be Found Liable for Defaming Lawson.

■■■ Lawson claims that the superior court's decision to grant the Helmers civil immunity when other people have been sentenced to serve time in jail and fined after being convicted of perjury violates the equal protection clauses of the state [16] and federal [17] constitutions. He further argues that the superior court's granting of immunity based on tort law should be reversed because it elevated tort law over the constitution. These constitutional claims are without merit.

■■■ Lawson does not state a cognizable equal protection claim, as "the basis of any equal protection claim is disparate treatment of similarly situated persons." [18] Lawson fails to establish this fundamental aspect of an equal protection violation because his civil defamation case is so dissimilar to a criminal perjury case. The purpose of the perjury statute is primarily to protect the integrity of court proceedings,[19] not to protect the object of the perjury, and we have never allowed a

party to sue a witness for defamation. Furthermore, the fact that other citizens have been convicted of perjury in the past is irrelevant because the Helmers were not prosecuted for perjury. Lawson's equal protection claims must be denied because he fails to establish the most fundamental aspect of an equal protection claim: that he has been treated differently than a similarly situated person.

Lawson also contends that his right to relief in this case is supported by Alaska's constitutional qualification of the right to free speech. He argues that we must reverse the superior court's decision because the Alaska Constitution provides that everyone is responsible for the abuse of their right to free speech.[20] In providing that citizens are responsible for abusing their right to free speech, the Alaska Constitution did not create an absolute right to sue others for defamation. Additionally, Alaska's perjury statute, AS 11.56.200, adequately fulfills any constitutional requirement that witnesses be held responsible for abusing their free speech rights.[21]

### C. Lawson Has Waived His Claim That the Superior Court Erred by Awarding Attorney's Fees to the Helmers.

■■■ Lawson contends that the superior court erred by awarding $6,174 in attorney's fees to the Helmers under AS 09.30.065(a)(1). We have previously declined to reach an issue when a party mentioned it only in passing in his statement of the case, failed to discuss it in the argument portion of his brief, and devoted one sentence to argu-

---

16. Alaska Const. art. I, § 1 provides in relevant part "that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State."

17. U.S. Const. amend. XIV, § 1 provides in relevant part that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."

18. *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001).

19. *Harrison v. State*, 923 P.2d 107, 109 (Alaska App.1996).

20. Alaska Const. art. I, § 5 provides that "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

21. Lawson makes a related argument that the superior court's decision should be overturned in order to allow the Juneau Police Department to pursue perjury charges against the Helmers. Lawson contends that the Juneau Police Department refused to "pursue [the Helmers] for perjury" because of the superior court's grant of immunity. In order to clear up any misunderstanding, we note that the grant of immunity in this case does not protect the Helmers from prosecution for perjury.

ing the issue in his reply brief.[22] In this case, Lawson fails to offer *any* support for his claim in the "statement of the issues for review" that the award of attorney's fees was unconstitutional because it places a deterrent on his right to "petition the government for a redress of grievances." Though we relax some procedural requirements for a *pro se* litigant where the litigant has made a good faith attempt to comply with judicial procedures,[23] Lawson has not met this standard here. We decline to reach this issue because Lawson presented no argument at all in support of his claim.

## V. CONCLUSION

Because immunity from derivative defamation suits is necessary to encourage the full and uninhibited testimony of witnesses such as the Helmers, and because Lawson was fully protected from any alleged misconduct of the Helmers by several procedural safeguards, we AFFIRM the superior court's decision dismissing the defamation suit as a matter of law. We also affirm the award of attorney's fees because Lawson waived the issue by failing to brief it adequately.

---

**22.** *Bishop v. Clark,* 54 P.3d 804, 815 n. 32 (Alaska 2002).

**23.** *Kaiser v. Sakata,* 40 P.3d 800, 803 (Alaska 2002).