*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES F. BUSH, | ) | |
| | ) | Supreme Court No. S-14947 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-10-01140 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CRAIG ELKINS and THE | ) | |
| GOVERNMENT EMPLOYEES | ) | No. 6980 – January 23, 2015 |
| INSURANCE COMPANY, d/b/a | ) | |
| GEICO CASUALTY COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna Moran, Judge.

Appearances: James F. Bush, pro se, Sterling, Appellant. Kimberlee A. Colbo, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

I.       INTRODUCTION

An adult passenger in a car was injured in a single-car accident. The passenger and his family brought suit against the vehicle's unlicensed minor driver, the

minor's mother, the owner of the car, the insurance policy holder, the insurer, and the insurance adjuster who handled the claims arising from the accident. The passenger's father attempted to raise a contractual interference claim, but the superior court concluded that the complaint did not state such a claim on his behalf. The superior court dismissed the father's only other claim — intentional infliction of emotional distress — removed the father's name from the case caption, and ordered the father to cease filing pleadings on behalf of other parties.

After the superior court judge dismissed him from the action, the passenger's father attempted to file a first amended complaint, which expressly stated his contractual interference claim on the theory that he was a third-party beneficiary of the contracts between his son and his son's doctors. But the superior court denied the father leave to amend the complaint because the father had already been dismissed from the case. Following a settlement among all of the other plaintiffs and defendants — a settlement in which the father did not join — the superior court granted final judgment to the insurer. The insurer moved for attorney's fees against the father under Alaska Civil Rule 82, but the father never responded to that motion. The superior court granted the award without soliciting a response from the father, and the father appeals.

We affirm the superior court's order dismissing the father's claims and denying leave to amend the complaint because the proposed first amended complaint was futile. But because the superior court had barred the father from filing any further pleadings in the case and had removed his name from the caption, the superior court had a responsibility to inform the self-represented father that he was permitted to file an opposition to the motion for attorney's fees. We thus vacate the fee award and remand to the superior court to afford the father an opportunity to respond to the insurer's motion for reasonable attorney's fees.

## II.    FACTS AND PROCEEDINGS

### A.    The Accident And Initial Complaint

This action arises out of a single-car accident in early July 2010. The driver was 16-year-old Bradley Luke, who was not licensed to drive in Alaska. Bradley crashed a car owned by Monte Luke, which was insured by Government Employees Insurance Company (GEICO) under a policy held by Coral Frank. Craig Elkins is the GEICO employee in Alaska who handled claims arising from the accident. Frank Bush, an adult passenger in the car, suffered severe injuries in the accident.

Frank Bush, his mother, his father, and his sister filed a civil complaint against Bradley Luke as the driver of the car and against Bradley's mother Arlene Luke; Monte Luke, the owner of the car; Coral Frank, the policy holder; GEICO, the insurer; and its employee, Elkins. The plaintiffs proceeded without representation. Frank Bush's father, James Bush, is the sole appellant in this case.

The complaint alleged seven causes of action including four claims against Bradley Luke, Arlene and Monte Luke, and Coral Frank (collectively, "the Luke defendants") for negligent driving, negligent supervision, negligent entrustment, and negligent infliction of emotional distress. The complaint also alleged three claims against GEICO and its employee Elkins for contractual interference, intentional infliction of emotional distress, and negligent supervision. On the claim of contractual interference, the complaint alleged that GEICO "improperly interfered with contractual relations betwee[n] the plaintiff(s) and various health care providers," resulting in increased physical and economic injuries to Frank Bush and "sever[e] emotional distress and anxiety" to "the plaintiff(s)." Whether this language effectively pleaded a claim for contractual interference on James's behalf is central to the subsequent proceedings before the superior court and to this appeal.

**B. Procedural History: Motion To Dismiss, Motions For Summary Judgment, And Motions To Amend The Complaint**

GEICO answered the complaint and moved to dismiss all claims raised against it for failure to state a claim. It admitted that the vehicle involved in the accident was insured by GEICO and argued that it could not, as a matter of law, be held directly liable for the wrongdoing of the Luke defendants. GEICO contended that the three causes of action brought against it — intentional infliction of emotional distress, negligent supervision, and contractual interference — were "really claims handling type claims" that might apply were the plaintiffs insured by GEICO but could not apply absent a contractual relationship between GEICO and Frank Bush, his parents, or his sister.

The plaintiffs responded that GEICO was misreading the three causes of action, arguing that those claims against GEICO were for torts whose viability is unaffected by the existence of a contractual relationship. The superior court granted in part and denied in part GEICO's motion to dismiss. The order specified that the "direct actions against [the Luke defendants] . . . may not be brought against [GEICO] based on its role as the insurer for these individuals." But the superior court denied GEICO's motion to dismiss the claim for intentional interference with contractual relations, reasoning that the claim provided GEICO with "fair notice of the grounds on which Plaintiffs' claim rests," and it denied GEICO's motion to dismiss the negligent supervision claim, noting that it did not "fully understand the basis" of the claim and that the claim might better be addressed after it was "more fully developed." Finally, the superior court denied GEICO's motion to dismiss the intentional infliction of emotional distress claim, "except for that portion pertaining to GEICO's failure to contact James Bush" which it granted because "fail[ing] to contact Plaintiff James Bush as the family's designee . . . is not outrageous and is not actionable." Thus, the superior court's ruling

on GEICO's motion dismissed James's only individual claim: intentional infliction of emotional distress. The other plaintiffs — Frank Bush, his mother, and his sister — retained their first four claims against the Luke defendants, as well as their three claims against GEICO.

Before resolution of its motion to dismiss, GEICO moved for summary judgment on all remaining claims against it and its claims handler, Elkins, reiterating the arguments raised in its motion to dismiss. The Luke defendants moved for summary judgment against James because he "ha[d] not stated a claim against the defendants," requested that James's "name [be] removed from the caption," and requested "an order prohibiting him from the unauthorized practice of law," stating their view that James "should not be allowed to continue to sign any type of pleading on behalf of any of the parties or make appearances in court for the parties" once dismissed from the lawsuit.

GEICO joined the Luke defendants' motion for summary judgment against James and their motion for an order removing James from the case caption. In response to these motions, James acknowledged that he "[brought] no claim against [the Lukes]." In his response to GEICO's motions for summary judgment, James for the first time stated, with regard to the contractual interference claim, his view that he "was . . . a third-party beneficiary to the contracts involved" and that he remained "a viable party" in that claim. He further argued that the motions were "insufficient as a matter of law" because "[n]owhere in any of the pleadings proffered by GEICO . . . do they allege [James Bush] would not be a proper party to the action against them under a theory of intentional interference with contractual relations."

In June 2012 the superior court granted the defendants' motions for summary judgment against James. The superior court read the complaint as indicating that James had brought a single claim for intentional infliction of emotional distress against GEICO and that this claim had been rejected when the superior court granted

GEICO's motion to dismiss. The superior court also concluded that "James Bush should be removed from the caption of this case and is not allowed to file pleadings on behalf of other parties, as he is not a licensed attorney in the State of Alaska."

On the same day that it granted complete summary judgment against James, the superior court granted some of the remaining plaintiffs' motions for leave to amend their complaint. Frank Bush, his parents, and his sister had each moved to amend their complaint. All four motions were identical, asking only to add a defendant and two plaintiffs to the action.[1] The Luke defendants did not oppose the motions, and the superior court granted the motions made by Frank's mother and sister, while overlooking Frank's and James's identical motions.[2]

Shortly after the superior court granted the motions for summary judgment, James filed a motion "seeking clarification and/or reconsideration upon the issue of his status as a plaintiff." He argued that the superior court's order denying GEICO's motion to dismiss as to the contractual interference claim had "ruled that all plaintiffs," including James, "may have an actionable complaint against [GEICO] for interference with contractual relations," and he reiterated the position he took in his opposition to the motion for summary judgment that he was "a third party beneficiary" of Frank's attempts to contract with health care providers because he "was paying all costs associated with achieving performance of these contracts." Accordingly, James argued that the court had

---

[1] James contends that he sought leave to amend "to add additional parties and to solidify his third-party beneficiary claim." The record on appeal does not support this assertion. He sought leave to amend only to add additional parties.

[2] James contends that the superior court "granted his motion seeking leave to amend the complaint." Once again, the record on appeal does not support this assertion.

no authority to remove his name from the caption and that the removal would improperly interfere with James's right to appeal.

The superior court denied James's motion for clarification and reconsideration, explaining that its order granting GEICO's motion to dismiss entirely disposed of James's role in the case by dismissing his intentional infliction of emotional distress claim. The superior court ruled that "[t]he original complaint d[id] not set forth" a claim by James for contractual interference and did not allege that James "is a third party beneficiary to contracts entered by Frank Bush."

After denial of James's motion, the plaintiffs, including James, submitted a first amended complaint. Along with adding another defendant and two new plaintiffs, the amended complaint also revised the contractual interference claim to state that James "invest[ed] personal funds for the express purpose of obtaining medical care for his son," that James "invested these funds with the expressed intent . . . of assisting [Frank] in contracting with various health care providers to receive treatment," that James "sought no other, no[r] did he receive any other, consideration for having provided these funds," and that "to date [James] has not received the contractual consideration he had expected when investing these funds and as a result has sustained economic loss and personal injury in the form of emotional distress."

The superior court rejected James's first amended complaint, ruling that James "can't be added back in; I've already dismissed him out." The superior court returned the amended complaint for re-filing without James as a plaintiff.

## C.    Settlements, Final Judgment, And Attorney's Fees

All of the plaintiffs and defendants, except James, reached a settlement and agreed to dismiss the action with prejudice and bear their own litigation expenses. James separately agreed to dismiss with prejudice any claims against the Luke defendants, but he did not agree to a settlement with GEICO. Having failed to reach a settlement,

GEICO filed a motion for entry of final judgment against James, which the superior court granted in light of its prior orders dismissing all of James's claims.

GEICO then moved for attorney's fees from James pursuant to Alaska Civil Rule 82. GEICO stated that its actual costs were $24,700 and sought an award of $7,410.[3] James did not respond to the motion for attorney's fees. Instead, in his points on appeal filed with this court a month before the superior court's order awarding attorney's fees to GEICO, James expressed his view that the superior court erred by "removing [James's] name from the caption" while "continu[ing] to accept and rule upon pleadings offered by other parties seeking procedural decisions and judgments against [him] and not permitting him to file any sort of responsive pleadings."

GEICO filed a motion requesting a ruling on its motion for an award of attorney's fees, and the superior court awarded GEICO $3,533.68 in attorney's fees from James, noting that it had deducted fees incurred after James's claims were dismissed, and that it awarded only 20% of the actual reasonable fees, per Rule 82(b)(2), because the case did not go to trial.

## III.   STANDARDS OF REVIEW

"We review for abuse of discretion a trial court's decisions concerning whether to inform a pro se litigant of the specific defects in a pleading and whether to provide an opportunity to remedy those defects. 'We will find an abuse of discretion if our review of the record leaves us with a definite and firm conviction that the [trial court] made a mistake[.]' "[4] Similarly, "[w]e review a superior court's denial of a motion to

---

[3]     GEICO argued that it was the prevailing party and therefore was entitled to 30% of reasonable actual fees, despite the fact that the case did not go to trial.

[4]     *Genaro v. Municipality of Anchorage*, 76 P.3d 844, 845 (Alaska 2003) (alteration in original) (quoting *Hughes v. Bobich*, 875 P.2d 749, 755 (Alaska 1994)).

amend a complaint for abuse of discretion."[5]  However, "[i]t is within a trial court's discretion to deny such a motion where amendment would be futile because it advances a claim or defense that is legally insufficient on its face."[6]  "We consider with independent judgment whether a proposed amended complaint could survive dismissal; if we conclude that it could not, we will hold that the superior court did not abuse its discretion by denying the motion for leave to amend."[7]  "We review rulings on motions for summary judgment de novo."[8]  "When applying the de novo standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[9]  Finally, "[t]his court reviews an award of attorney's fees for an abuse of discretion.  Under this standard, the trial court has broad discretion in awarding attorney's fees; this court will not find an abuse of discretion absent a showing that the award was arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[10]

---

[5]     *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010).

[6]     *Id.* (internal quotation marks omitted).

[7]     *Id.* at 177.

[8]     *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (citing *Witt v. State, Dep't of Corr.*, 75 P.3d 1030,1033 (Alaska 2003)).

[9]     *Id.* (quoting *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 802 (Alaska 2011)).

[10]     *Id.* at 137 (quoting *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007)) (internal quotation marks omitted).

## IV. DISCUSSION

On appeal, James raises arguments related to the dismissal of his claims at summary judgment and the superior court's award of attorney's fees against him.[11]  We address each in turn.

### A. The Superior Court's Grant Of Summary Judgment And Refusal To Grant Leave To Amend The Complaint

James argues first that summary judgment was improperly granted because he had raised a contractual interference claim in the original complaint and GEICO failed to satisfy its burden to establish no genuine issue of material fact under Alaska Civil Rule 56(c).[12]  Alternatively, James argues that the superior court should either have informed him of the need to amend his complaint before granting summary judgment against him or adopted the first proposed amended complaint submitted to the court after his dismissal from the case.  Because James ultimately filed an amended complaint, which clearly articulated his contractual interference claim, any error regarding the superior court's interpretation of the original complaint or its failure to instruct James regarding the need to amend his complaint was cured, leaving the superior court's decision not to grant leave to amend as the only potential source of error.

In rejecting James's first amended complaint, the superior court reasoned only that it could not add James back in after it had "already dismissed him out."

---

[11]     James raised an additional argument in his points on appeal related to a discovery dispute with GEICO.  But James did not discuss the issue in his brief on appeal.  Therefore the issue is forfeited despite GEICO's briefing on the issue and James's response in his reply brief.  *See Lyman v. State*, 824 P.2d 703, 706 (Alaska 1992) ("Generally, points on appeal not briefed are considered abandoned.").

[12]     Civil Rule 56(c) provides in part that "[t]here must . . . be served and filed with each motion a memorandum showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Ordinarily, under Alaska Civil Rule 15(a), leave to amend "shall be freely given."[13] We have elaborated on this rule, recognizing that absent an "apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be freely given."[14] Although the superior court did not undertake any analysis of whether leave to amend should have been freely given or whether there was basis to deny leave under Rule 15(a), we conclude that the proposed amendment to the complaint was futile and would not have survived a motion for summary judgment.[15]

Even if the proposed amended complaint had been adopted, James's contractual interference claim would have failed as a matter of law because James did not allege that he was a direct party to any of the contracts with Frank's healthcare providers, and he was not a third-party beneficiary to those contracts as a matter of law. "In determining whether a third party is an intended beneficiary of a contract, we refer to the Restatement (Second) of Contracts [§ 302]."[16] We look to the intent of the

---

[13]     Alaska R. Civ. P. 15(a).

[14]     *Miller v. Safeway, Inc.*, 102 P.3d 282, 294 (Alaska 2004) (quoting *Betz v. Chena Hot Springs Group*, 742 P.2d 1346, 1348 (Alaska 1987)) (internal quotation marks omitted).

[15]     *See Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 177 (Alaska 2010) ("We consider with independent judgment whether a proposed amended complaint could survive dismissal; if we conclude that it could not, we will hold that the superior court did not abuse its discretion by denying the motion for leave to amend.").

[16]     *Rathke v. Corr. Corp. of Am., Inc.*, 153 P.3d 303, 310 (Alaska 2007). The Restatement (Second) of Contracts § 302 provides:

(continued...)

promisee, in this case Frank Bush, "to give the beneficiary the benefit of the promised performance."[17] In doing so, we look for objective manifestations of intent rather than subjective motives.[18] Applying this standard, the proposed amended complaint would not have survived summary judgment because it did not allege that Frank intended for his contracts with health care providers to benefit James. Rather, the proposed amended complaint states only that James gave money to Frank with the intent that Frank use it to obtain medical care. Moreover, the benefit of the promised performance — medical care — did not run to James. It was directed entirely to Frank, the patient undergoing treatment. Because the proposed amendment did not state a valid claim for relief, it was futile and we affirm the superior court's refusal to permit James to amend his complaint.

**B.      The Superior Court's Award of Attorney's Fees To GEICO**

Following James's dismissal and GEICO's settlement with the remaining plaintiffs, GEICO sought and obtained entry of final judgment against James. GEICO

---

[16](...continued)
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

[17]     RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(b) (1979).

[18]     *Rathke*, 153 P.3d at 310.

then moved for attorney's fees as the prevailing party pursuant to Alaska Civil Rule 82.[19] James did not respond to the motion in superior court. Instead he filed points on appeal in this court indicating that the superior court had "not permitted him to file any sort of responsive pleadings." James's belief that he was not permitted to file responsive pleadings may have derived from a combination of factors including his dismissal from the case, the removal of his name from the case caption, and the superior court's instruction to cease filing "pleadings on behalf of other parties." Following GEICO's renewed request for a ruling on its motion for attorney's fees, and without receiving a response from James, the superior court granted an award of $3,533.68, or 20% of the reasonable fees incurred while James was still a party to the case.[20] James argues on appeal that the superior court lacked authority to remove his name from the case caption and abused its discretion in granting GEICO's motion for attorney's fees while simultaneously prohibiting him from filing a response.

We need not address the superior court's authority to amend the caption because that question relates primarily to James's argument that he was unconstitutionally denied access to the court and that he was unaware that he was allowed to file an opposition to GEICO's motion for attorney's fees. We vacate the attorney's fee award on the ground that the superior court erred by failing to inform James that he was permitted to file a response to GEICO's motion despite the court's earlier direction that James not file further pleadings. Thus we do not address the superior court's unusual decision to remove James's name from the caption.

---

[19] Alaska R. Civ. P. 82(a) ("[T]he prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

[20] *Id.* 82(b)(2) ("In cases in which the prevailing party recovers no money judgment, the court shall . . . award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred.").

Turning to the superior court's duty to self-represented litigants, trial court judges must strike an appropriate balance between their role as a neutral and impartial decision maker[21] and their affirmative duty to advise self-represented litigants.[22] We first addressed this balancing act in *Breck v. Ulmer*, which established a duty to "inform a *pro se* litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[23] Since *Breck*, we have delineated the contours of this obligation.[24] We have also acknowledged that while the rules of court "may be models of clarity to one schooled in the law, a pro se litigant might not find them so."[25] Thus while "open-ended participation by the court [that] would be difficult to contain" is outside the scope of the superior court's duty to self-represented litigants,[26] where a self-represented litigant is obviously attempting to accomplish a discrete action and his procedural failing is the result of "a lack of familiarity with the rules rather than gross neglect or lack of good

---

[21]    *See Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) ("To require a judge to instruct a pro se litigant as to each step in litigating a claim would compromise the court's impartiality in deciding the case by forcing the judge to act as an advocate for one side.").

[22]    *See Breck v. Ulmer*, 745 P.2d 66, 74 (Alaska 1987).

[23]    *Id.*

[24]    For instance, "the trial court ha[s] no obligation to be lenient with a pro se litigant who ha[s] made 'no effort to cooperate with the trial court or to request assistance in complying with its orders.' " *Genaro v. Municipality of Anchorage*, 76 P.3d 844, 846 (Alaska 2003) (quoting *Coffland v. Coffland*, 4 P.3d 317, 321 (Alaska 2000)).

[25]    *Collins v. Arctic Builders*, 957 P.2d 980, 982 (Alaska 1998).

[26]    *Bauman*, 768 P.2d at 1099. We have also noted that open-ended participation by the court would tax limited judicial resources and impair judicial efficiency. *See Greenway v. Heathcott*, 294 P.3d 1056, 1072 (Alaska 2013).

faith,"[27] the superior court retains an obligation to inform that litigant of the proper procedure for that action.[28] Although the superior court has no general duty to inform a self-represented litigant of the opportunity or need to file a responsive pleading,[29] here a duty to inform James of his ability to file a response to GEICO's motion arose from the superior court's actions in removing James's name from the case caption and instructing James to cease filing pleadings on behalf of other parties once he had been dismissed and his name was no longer listed in the caption as a party to the case.

We emphasize that this holding is limited to the unique facts presented. The dismissal of James from the case, the removal of his name from the case caption, and most importantly the instruction to cease filing "pleadings on behalf of other parties" left James with the belief that he was not permitted to file responsive pleadings in the matter arising out of his son's injuries. The superior court was on notice of this misunderstanding. In his response to GEICO and the Luke defendants' motions for summary judgment James expressed his belief that the removal of his name from the case caption, and the prohibition against filing pleadings, would impermissibly curtail his access to the court system and right to an appeal. James's misunderstanding reflects "a lack of familiarity with the rules rather than gross neglect or lack of good faith."[30] Such a lack of familiarity, particularly here where James had actively engaged with the

---

[27]     *Wagner v. Wagner*, 299 P.3d 170, 174 (Alaska 2013) (quoting *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002)) (internal quotation marks omitted).

[28]     *See Breck*, 745 P.2d at 74.

[29]     *See Capolicchio v. Levy*, 194 P.3d 373, 379 (Alaska 2008) (declining to require a trial court judge to inform a pro se litigant of the need to file an opposition to a motion for summary judgment).

[30]     *Wagner*, 299 P.3d at 174 (quoting *Kaiser*, 40 P.3d at 803) (internal quotation marks omitted).

litigation process up to the point of being instructed to cease filing pleadings, required the superior court to inform James of his ability to respond to the motion for attorney's fees. This error is not harmless. Because the superior court failed to clarify that James was permitted to respond, he was not afforded an opportunity to dispute the reasonableness of the fees or the reasonableness of using the total fees incurred against all of the plaintiffs as the base for applying the Rule 82 percentage for an award against him, or to argue for a downward deviation from the default 20% fee award at the discretion of the superior court under Civil Rule 82(b)(3).[31] To grant an award without notice of the opportunity to respond to the motion for attorney's fees requires that we vacate the superior court's order granting an award of attorney's fees to GEICO and remand to provide James leave to file a response to GEICO's attorney's fees motion.

## V.    CONCLUSION

We AFFIRM the grant of summary judgment and AFFIRM the superior court's order denying leave to amend because the proposed amendment to the complaint was futile. We VACATE the fee award and REMAND to the superior court to afford James Bush an opportunity to respond to the insurer's motion for reasonable attorney's fees.

---

[31]    Civil Rule 82(b)(3) provides discretion to the superior court to deviate downward from the 20% default award based on factors such as "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts," "the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar," and "other equitable factors deemed relevant."