Marian **SCHAFER** and State of Alaska, Appellants,

v.

Rodney **VEST**, Appellee.

No. S–289.

Supreme Court of Alaska.

April 27, 1984.

Robert M. Maynard, Deborah Vogt, Asst. Attys. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellants.

Mark A. Sandberg, Henry J. Camarot, Camarot, Sandberg & Hunter, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

On April 6, 1984, we affirmed summarily a trial court determination that Alaska's Longevity Bonus Program[1] violates the equal protection provisions of the fourteenth amendment to the Constitution of the United States. We now state the reasons for our decision.

The Longevity Bonus Program, created in 1972, pays a monthly cash bonus to qualified Alaska residents.[2] Persons who qualify are those meeting three separate requirements:

1. The individual must be age 65 or over.

2. The individual must have been domiciled in Alaska when it was still a territory (on or before January 3, 1959).

3. The individual must have maintained 25 years of continuous domicile in the state or territory of Alaska.[3]

The sole purpose of the Longevity Bonus Program, according to AS 47.45.170, is to offer and provide qualified Alaskans "an

---

**1.** AS 47.45.010—47.45.170.

**2.** The original legislation provided for a bonus of $100 per month. (§ 1 ch. 205 SLA 1972). In 1976 this amount was increased from $100 to $125 (am § 1 ch. 33 SLA 1976); in 1978 the amount was again increased to $150 (am § 1 ch. 89 SLA 1978); in 1980 the amount was increased to $200 (am § 1 ch. 147 SLA 1980); and in 1981 the amount was raised to its present level of $250 (am § 1 ch. 13 SLA 1981).

**3.** AS 47.45.010(a).

incentive to continue uninterrupted residency in the state." [4]

Rodney Vest became a resident of the state of Alaska in April, 1959, approximately three months after statehood. On July 6, 1982, he filed a complaint against Marian Schafer, the administrator of the Longevity Bonus Program, and the State of Alaska. At the time he filed suit, Vest was 67 years old. Vest alleged, among other things, that the limiting of the longevity bonus to persons domiciled in the territory on or before January 3, 1959, and who have maintained a continuous 25 year domicile violates his right to equal protection of the law.

On December 17, 1983, the superior court entered a Memorandum of Decision and Order. The superior court ruled that the Longevity Bonus Program was unconstitutional under the equal protection clause of the United States Constitution.[5] The trial court then held that the unconstitutionality of the residency requirements was not severable from the rest of the program.[6] That is, it rejected Vest's argument that the offending provisions could be severed,

thereby opening the program to all bona fide Alaska residents over age 65. Accordingly, the trial court enjoined the state from enforcing the Longevity Bonus Program.

The state appeals the superior court's holdings that the 25 year residency requirement and pre-January 3, 1959 domicile requirement violate the equal protection clause of the federal Constitution.

Resolution of this challenge is controlled by the United States Supreme Court's decision in *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (*Zobel III*). There, eight Justices held that Alaska's permanent fund dividend program [7] violated the federal Constitution. The majority opinion of the Court found that the state's objective—"to reward citizens for past contributions"—was "not a legitimate state purpose." 457 U.S. at 63, 102 S.Ct. at 2314, 72 L.Ed.2d at 679. After *Zobel III*, it is clear that the federal Constitution will not tolerate a state benefit program which "creates fixed, permanent distinctions between ... concededly bona fide residents, based on how long they have been in the

---

**4.** AS 47.45.170 states:

*The sole purpose of this chapter is to offer and provide* all law-abiding Alaskans capable of managing their own affairs who have maintained a domicile in the state for at least 25 years and have reached a retirement age of 65, *an incentive to continue uninterrupted residency in the state.* Under no circumstances shall this chapter be considered a form, type, or manner, of public relief. Bonuses made under this chapter are not predicated on need even though they may appear to provide supplemental income to some qualified persons who would otherwise be forced to become responsibilities of the state. The legislature further finds and states that this legislation recognizes the economic hardships suffered by many elderly Alaskans, Alaskans who through their tenacity and perseverance molded Alaska as we know it through skillful application of their talents. These pioneers are the same Alaskans, who in the prime of their life were in effect treated as second-class citizens by the federal government and who paid much of their hard-earned income to a government in which they did not have the right to participate through the power of the ballot. The legislature also is aware of the fact that many of these pioneers have been

forced to live out their retirement years in areas far away from the land they loved and nurtured and thereby also suffering, in many cases, the loss of familial relationship with their own kin, an experience that is sad and frustrating to them as well as depriving new generations of Alaskans of the benefits of their wisdom and experience. This legislation hopefully will provide our pioneers with the economic means to remain in and continue to serve their state and to enjoy the opportunity of aiding the new Alaskan in making this state truly "The Great Land."
(Emphasis added).

**5.** U.S. Const. amend. XIV, § 1. The court found it unnecessary to address Vest's further contention that the program also violates his state equal protection rights, under Alaska Const. art. I, § 1.

**6.** The statute itself contains a non-severability clause, which specifically prohibits any part of the statute from being enforced if any portion of it is found unconstitutional. *See* § 2, ch. 205, SLA 1972.

**7.** Under this program, each adult received one dividend unit for each year of residency subsequent to 1959.

State." 457 U.S. at 59, 102 S.Ct. at 2312, 72 L.Ed.2d at 677.

The purpose of the Longevity Bonus Program is set forth in the Act. AS 47.45.-170.[8] The state's brief extrapolates three purposes from this statute:

1) To provide an incentive for those who qualify to stay in Alaska so as not to deprive new generations of Alaskans of this cultural memory bank.

2) To provide compensation for past hardship suffered in territorial days.

3) To prevent present hardship by providing those who qualify with the economic means to remain in the state.

Despite the state's effort of breaking down the Act's statement of purpose into three parts, the basic purpose of the legislation is to provide a limited group of residents a monetary "incentive to continue uninterrupted residency in the state." AS 47.45.-170. Thus, it creates an exclusive class that is to receive special benefits due to the length of the class member's residence in Alaska. Just like the permanent fund dividend program, the Longevity Bonus Program rewards citizens for past contributions; it "creates fixed, permanent distinctions between ... concededly bona fide residents, based on how long they have been in the State." *Zobel III*, 457 U.S. at 59, 102 S.Ct. at 2312, 72 L.Ed.2d at 677.

Insofar as the first purpose is concerned, the state's basic premise is that the designated bonus recipients suffered a special hardship living here when Alaska was a territory and have a special memory which merits a special award not available to other older Alaskans. It is this supposition that living in territorial Alaska makes an individual entitled to special *legal* stature that is impermissible. The federal Constitution prohibits states from making such determinations. The basic predisposition to take care of one's own—and no one else's— is no longer a permissible goal for a state that has joined the federal union.

This basic tenet of federalism was cogently expressed in *Cole v. Housing Authority of the City of Newport*, 435 F.2d 807 (1st Cir.1970). In that case the First Circuit invalidated under equal protection a two year residency requirement for admission to federally-aided, low-rent, public housing projects. In invalidating this residency requirement, the court stated:

[w]e [do not] believe the goal of promoting provincial prejudices toward longtime residents is cognizable under a Constitution which was written partly for the purpose of eradicating such provincialism.

435 F.2d at 813.

The second purpose the state identifies is "to provide compensation for past hardship suffered in territorial days." *Zobel III*'s basic holding is that rewarding citizens for past contributions is not a legitimate state purpose. *Zobel v. Williams*, 457 U.S. at 63, 102 S.Ct. at 2314, 72 L.Ed.2d at 679. Thus, the purpose of the Act to compensate this select class for past hardship is impermissible.

Finally, we are left with the state's goal of preventing present hardship to a select group of senior citizens. Assuming it was permissible for the state to provide benefits to all bona fide residents over sixty-five, the singling out of residents who were here before 1959 and have resided here for 25 years is not rationally related to the goal of providing assistance to the elderly. As a class, bonus recipients do not suffer more present economic hardship than those senior citizens who do not meet the program's requirements. Accordingly, the Longevity Bonus Program's classification does not survive even the lowest level of judicial scrutiny.

The judgment of the superior court is AFFIRMED.[9]

BURKE, Chief Justice, concurring.

I concur in the court's interpretation of the requirements of the fourteenth amend-

8. AS 47.45.170 is set out in full at note 4, *supra.*

9. We would reach the same result under article I, section 1 of the Alaska Constitution, which provides in part: "[A]ll persons are equal and entitled to equal rights, opportunities, and protection under the law."

ment, and its decision to affirm the judgment of the superior court. I would base our decision, however, on independent state grounds.

Alaska's founding fathers were not content merely to echo the requirements of the fourteenth amendment, which guarantees all persons "equal protection of the laws." They intended to provide the citizens of this state with broader protection than they are entitled to under the Constitution of the United States. Thus, they adopted a provision that is quite different in its terminology, declaring "that all persons are equal and entitled to equal rights, opportunities, *and* protection under the law." Article I, section 1, Alaska Constitution (emphasis added).

The proceedings of the Alaska Constitutional Convention make it abundantly clear that this difference is one of substance, rather than mere style. Delegate Awes, for example, in explaining this choice of language to the Convention, stated: "We do mean all three [guarantees]. I think [such language] means [people] are entitled to equal rights, equal opportunities, *and* equal protection under the law." 5 Proceedings of the Alaska Constitutional Convention 3863 (February 3, 1956) (emphasis added). Delegate Johnson, phrasing it somewhat differently, stated: "There are two things that are provided for here. One is that all persons are equal under the law and the other is that they are entitled to equal rights and opportunities under the law. They are two separate and distinct things." *Id.* at 1293 (January 5, 1956).

The Longevity Bonus Program, regardless of what might be said in its defense under federal notions of equal protection, fails to provide many citizens of the state with equal rights and opportunities, contrary to the express provisions of article I,

section 1. It is intended, in fact, to do just the opposite. Persons who were not domiciled in Alaska prior to January 3, 1959, are automatically and forever barred from sharing in the program's monetary benefits.[1] Even those thus qualified must meet the additional requirement of 25 years of continuous domicile. Thus, the program applies only to a select class, for which one qualifies solely on the basis of the date of his or her arrival in Alaska, followed by a prescribed period of continuous domicile. I see no substantial relationship between these requirements and any legitimate state purpose. *See State v. Erickson*, 574 P.2d 1, 11–12 (Alaska 1978) (equal protection analysis under the Alaska Constitution explained).

Thus, I would affirm the superior court's judgment on the ground that the Longevity Bonus Program violates article I, section 1 of the Alaska Constitution. It does so because it denies Vest and the members of the class rights and opportunities equal to those given to other citizens of the state, for reasons that are impermissible. This is the case whether or not our interpretation of the requirements of the fourteenth amendment is correct, since article I, section 1 provides express guarantees beyond those contained in the fourteenth amendment.

Our duty, as I see it, is to look first to the requirements of the Alaska Constitution. If the protection sought is afforded by that document, it becomes irrelevant whether or not the same protection is provided by the Constitution of the United States.

---

**1.** The program in this case is distinguishable from the permanent fund dividend distribution plan that was before us in *Williams v. Zobel,* 619 P.2d 448 (Alaska 1980), *reversed* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). There, we observed: "Under the terms of the [dividend distribution] program, it is clear that there is no absolute denial. A new resident is immediately

eligible for some portion of a dividend; and this new resident's achievement of the level of dividends currently held by a long-term resident ... is only a matter of delay...." 619 P.2d at 456. In the case at bar, one who was not domiciled in Alaska on or before January 3, 1959 can *never* qualify for receipt of longevity bonus payments.