ALASKA CIVIL LIBERTIES UNION, Dan Carter and Al Incontro, Lin Davis and Maureen Longworth, Shirley Dean and Carla Timpone, Darla Madden and Karen Wood, Aimee Olejasz and Fabienne Peter–Contesse, Karen Sturnick and Elizabeth Andrews, Theresa Tavel and Karen Walter, Corin Whittemore and Gani Ruthellen, and Estra Bensussen and Carol Rose Gackowski, Appellants,

v.

STATE of Alaska and Municipality of Anchorage, Appellees.

No. S–10459.

Supreme Court of Alaska.

Oct. 28, 2005.

Allison E. Mendel, Mendel & Associates, Anchorage, Kenneth Y. Choe, American Civil Liberties Union Foundation, New York City,

New York, and Tobias B. Wolff, Davis, California, for Appellants.

John B. Gaguine, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee State of Alaska.

Neil T. O'Donnell, Atkinson, Conway & Gagnon, Anchorage, for Appellee Municipality of Anchorage.

James M. Gorski, Hughes, Thorsness, Gantz, Powell, Huddleston & Bauman LLC, Anchorage, for Amicus Curiae The Alaska Catholic Conference.

Rebecca L. Maxey, Law Offices of Rebecca L. Maxey, L.L.C., Anchorage, and Jennifer Middleton, Lambda Legal Defense and Education Fund, Inc., New York City, New York, for Amicus Curiae Lambda Legal Defense and Education Fund, Inc.

Kevin G. Clarkson, Brena, Bell & Clarkson, P.C., Anchorage, for Amici Curiae North Star Civil Rights Defense Fund, Inc. and Marriage Law Project.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

The State of Alaska and the Municipality of Anchorage offer valuable benefits to their employees' spouses that they do not offer to their unmarried employees' domestic partners. Essentially all opposite-sex adult couples may marry and thus become eligible for these benefits. But no same-sex couple can ever become eligible for these benefits because same-sex couples may not marry in Alaska.[1] The spousal limitations in the benefits programs therefore affect public employees with same-sex domestic partners differently than public employees who are married. This case requires us to determine if it is reasonable to pay public employees who are in committed domestic relationships with same-sex partners less in terms of employee benefits than their co-workers who are married. In making this determination, we must decide whether the spousal limitations in the benefits programs violate the rights of public employees with same-sex domestic partners to "equal rights, opportunities, and protection under the law."[2]

The Alaska Constitution dictates the answer to that constitutional question. Irrelevant to our analysis must be personal, moral, or religious beliefs—held deeply by many—about whether persons should enter into intimate same-sex relationships or whether same-sex domestic partners should be permitted to marry. It is the duty of courts "to define the liberty of all, not to mandate [their] own moral code."[3] Our duty here is to decide whether the eligibility restrictions satisfy established standards for resolving equal protection challenges to governmental action.

We do not need to decide whether heightened scrutiny should be applied here because the benefits programs cannot withstand minimum scrutiny. Although the governmental objectives are presumably legitimate, the difference in treatment is not substantially related to those objectives. We accordingly hold that the spousal limitations are unconstitutional as applied to public employees with same-sex domestic partners, and we vacate the judgment below. We ask the parties to file supplemental memoranda addressing the issue of remedy.

## II. FACTS AND PROCEEDINGS

The State of Alaska and the Municipality of Anchorage offer health insurance and other employment benefits to the spouses of their employees.[4] These benefits are finan-

1. Alaska Const. art. I, § 25.

2. Alaska Const. art. I, § 1. As the issue is framed in this case, we need not reach any separate question of the independent right to benefits of a same-sex domestic partner of a public employee.

3. *Lawrence v. Texas,* 539 U.S. 558, 559, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (citing *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 850, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)).

4. The plaintiffs' opening brief states that the benefits available for spouses of state employees

cially valuable to employees and their spouses. Only couples who are married are eligible to receive these benefits; unmarried couples are not eligible. The state and the municipality have offered some form of these employment benefits since 1955 and at least 1985, respectively.

The Alaska Civil Liberties Union and eighteen individuals who alleged that they comprised nine lesbian or gay couples (collectively, the "plaintiffs") filed suit against the state and the municipality in 1999, complaining that these benefits programs violated their right to equal protection under the Alaska Constitution. They alleged that at least one member of each same-sex couple was an employee or retiree of the state or the municipality, that the eighteen individual plaintiffs were involved in "intimate, committed, loving" long-term relationships with same-sex domestic partners, and that, as gay and lesbian couples, they are excluded by state law from the institution of marriage. Members of eight of the couples asserted in affidavits that they are in "committed relationships."[5] Their amended complaint alleged that because they are prohibited from marrying each other by Alaska Constitution article I, section 25, they are ineligible for the employment benefits the defendants provide to married couples, resulting in a denial of the individual plaintiffs' right to equal protection.

Article I, section 25 was adopted by Alaska voters in 1998. Commonly known as the Marriage Amendment, it provides: "To be valid or recognized in this State, a marriage may exist only between one man and one woman." It effectively prohibits marriage in Alaska between persons of the same sex.[6] The plaintiff employees consequently cannot enter into the formal relationship—marriage—that the benefits programs require if the employees are to confer these benefits on their domestic partners.

Put another way, the plaintiff employees and their same-sex partners are absolutely precluded from becoming eligible for these benefits. Although all opposite-sex couples who are unmarried are also ineligible for these employment benefits, by marrying they can change the status that makes them ineligible.

The plaintiffs did not challenge the Marriage Amendment in the superior court (nor do they on appeal). Instead, their amended complaint asked the superior court to declare that denying employment benefits to same-sex domestic partners violates, among other things, article I, section 1 of the Alaska Constitution, which states in part: "This constitution is dedicated to the principle[ ] ... that all persons are equal and entitled to equal rights, opportunities, and protection under the law."

All parties moved for summary judgment. The superior court denied the plaintiffs' motion and granted the defendants' motion. The court first rejected plaintiffs' assertion

include those provided by AS 39.20.360 (death benefits); AS 39.30.090 (life and health insurance); AS 39.35.450 (joint and survivor annuities); AS 39.35.535 (post-retirement health insurance); AS 14.25.010–.220 (benefits for retired teachers); and AS 22.25.010–.900 (benefits for retirees of state judiciary). These statutes do not expressly deny benefits to unmarried domestic partners, but each contains a clause expressly conferring them on an eligible employee's "spouse." The state refers to such clauses as "spousal limitations." We will sometimes use that terminology in this appeal.

No party has identified a Municipality of Anchorage ordinance containing an equivalent spousal limitation, but it is undisputed here that an unmarried domestic partner of a municipal employee is not eligible for employment benefits. We variously refer to the challenged state statutes and municipal benefit plans as "benefits laws" or "benefits programs."

5. We use the phrases "domestic partnership" and "committed relationship" interchangeably to refer to relationships between adult couples who reside together in long-term, interdependent, intimate associations. We use the phrase "domestic partners" to refer to persons in these relationships. The phrase includes both same-sex and opposite-sex couples. For our purposes, "domestic partners" also includes all married couples.

6. Section 25 does not contain express words of prohibition, but it confers validity or recognition in Alaska only on a marriage between one man and one woman. It therefore effectively prohibits marriage, or recognition of marriage, between persons of the same sex in Alaska.

AS 25.05.011(a), enacted in 1996, defines "marriage." It provides in part: "Marriage is a civil contract entered into by one man and one woman...."

that it was necessary to apply heightened scrutiny in considering their equal protection challenge; the court reasoned that heightened scrutiny was unwarranted because the state and the municipality were discriminating between married and unmarried employees, not between opposite-sex and same-sex couples. The court also determined that the only right at issue was a right to employee benefits, which it ruled was not a fundamental right. Because the court found that no suspect class or fundamental right was involved, it applied the lowest level of scrutiny to the governmental action. The court ruled that the defendants had a legitimate interest in reducing costs, increasing administrative efficiency, and promoting marriage. It then ruled that granting benefits only to spouses of married employees bore a fair and substantial relationship to those interests.

The plaintiffs appealed. Briefing on their appeal was completed and oral argument took place before the United States Supreme Court decided *Lawrence v. Texas.*[7] With our permission, the parties filed supplemental briefs discussing *Lawrence.*

## III. DISCUSSION

### A. Standard of Review

 We review a grant or denial of summary judgment de novo.[8] Summary judgment is only appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a

matter of law.[9] Deciding the applicable standard of scrutiny in an equal protection challenge to an allegedly discriminatory statute presents a question of law.[10] Likewise, identifying the nature of the challenger's interest and assessing the importance of the governmental interest and the fit between that interest and the means chosen to advance it, present questions of law.[11] We will apply our independent judgment to questions of law and adopt the rule of law most persuasive in light of precedent, reason, and policy.[12] We apply our independent judgment when interpreting constitutional provisions or statutes.[13] A constitutional challenge to a statute must overcome a presumption of constitutionality.[14]

### B. Effect of the Marriage Amendment on Plaintiffs' Equal Protection Arguments

The plaintiffs, in challenging the spousal limitations in the benefits programs, rely on article I, section 1 of the Alaska Constitution, which guarantees the right to equal treatment. It states that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."[15] Often referred to as the "equal protection clause," this clause actually guarantees not only equal "protection," but also equal "rights" and "opportunities" under the law.[16]

 But Alaska Constitution article I, section 25, the Marriage Amendment, states

7. *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

8. *City of Kodiak v. Samaniego,* 83 P.3d 1077, 1082 (Alaska 2004); *Powell v. Tanner,* 59 P.3d 246, 248 (Alaska 2002).

9. *Odsather v. Richardson,* 96 P.3d 521, 523 n. 2 (Alaska 2004).

10. *See Reichmann v. State, Dep't of Natural Res.,* 917 P.2d 1197, 1200 & n. 6 (Alaska 1996); *Sonneman v. Knight,* 790 P.2d 702, 704 (Alaska 1990).

11. *See Sonneman,* 790 P.2d at 704–06.

12. *Hickel v. Southeast Conference,* 868 P.2d 919, 923 (Alaska 1994); *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

13. *Alaska Trademark Shellfish, LLC v. State,* 91 P.3d 953, 956 (Alaska 2004); *State, Commercial*

*Fisheries Entry Comm'n v. Carlson,* 65 P.3d 851, 858 (Alaska 2003).

14. *Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 275 (Alaska 2001).

15. Alaska Const. art. I, § 1.

16. *See* Alaska Const. art. I, § 1; *Malabed v. North Slope Borough,* 70 P.3d 416, 420 (Alaska 2003) ("We have long recognized that the Alaska Constitution's equal protection clause affords greater protection to individual rights than the United States Constitution's Fourteenth Amendment."); *Schafer v. Vest,* 680 P.2d 1169, 1172 (Alaska 1984) (Burke, C.J., concurring, noting that this textual difference from the Federal Constitution emphasizes that the framers meant all three guarantees).

that "[t]o be valid or recognized in this State, a marriage may exist only between one man and one woman." It effectively prohibits same-sex domestic partners from marrying in Alaska and denies recognition in Alaska to foreign marriages between same-sex couples.[17] We must decide as a threshold matter whether, as contended by the municipality and amici curiae North Star Civil Rights Defense Fund, Inc. and the Marriage Law Project, the Marriage Amendment precludes challenges by same-sex couples to government policies that discriminate between married and unmarried couples.

■ We must give effect to every word, phrase, and clause of the Alaska Constitution.[18] "[S]eemingly conflicting parts are to be harmonized, if possible, so that effect can be given to all parts of the constitution." [19]

The Alaska Constitution's equal protection clause and Marriage Amendment can be harmonized in this case because it concerns a dispute about employment benefits. The Marriage Amendment effectively precludes same-sex couples from marrying in Alaska, but it does not explicitly or implicitly prohibit public employers from offering to their employees' same-sex domestic partners all benefits that they offer to their employees' spouses. It does not address the topic of employment benefits at all.[20]

Nor have we been referred to any legislative history implying that, despite its clear words, the Marriage Amendment should be interpreted to deny employment benefits to public employees with same-sex domestic partners.[21] The Marriage Amendment could have the effect of foreclosing the present challenge only if it could be read to prohibit public employers from offering benefits to their employees' same-sex domestic partners. But nothing in its text would permit that reading, and indeed the state and the municipality implicitly assume on appeal that governments are free to offer employment benefits to their employees' unmarried, domestic partners, including same-sex domestic partners.

Because the public employers' benefits programs could be amended to include unmarried same-sex domestic partners without offending the Marriage Amendment, that amendment does not foreclose plaintiffs' equal protection claims here. That the Marriage Amendment effectively prevents same-sex couples from marrying does not automat-

---

17. *See* Alaska Const. art. I, § 25.

Alaska voters adopted this amendment in 1998. *See* Office of the Lieutenant Governor, *Alaska Constitution: Alaska Constitutional Amendment Summary, at* http://www.gov.state. ak.us/ltgov/akcon/ summary.html. The amendment took effect January 3, 1999. *See Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358 (Alaska 2001).

18. *See Owsichek v. State, Guide Licensing & Control Bd.*, 763 P.2d 488, 496 (Alaska 1988); *State v. Ostrosky*, 667 P.2d 1184, 1191 (Alaska 1983); *Park v. State*, 528 P.2d 785, 786–87 (Alaska 1974); Chester James Antieau, Constitutional Construction § 2.06, at 18–20 (1982).

19. Antieau, *supra* note 18, § 2.15, at 27; *see also Ostrosky*, 667 P.2d at 1190 (holding that constitutional amendment "cannot, in turn, be challenged as unconstitutional under preexisting clauses in the same document").

20. Explicitly denying benefits to public employees with same-sex domestic partners would arguably offend the Federal Constitution. In *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), the United States Supreme Court struck down on federal equal protection grounds an amendment to the Colorado Constitution that repealed all local and statewide laws prohibiting discrimination based on sexual orientation. The Court explained that in addition to merely repealing state and local laws, the amendment "prohibits all legislative, executive, or judicial action at any level of state or local government designed to protect the named class...." *Id.* at 624, 116 S.Ct. 1620. The Court invalidated the amendment under the rational basis standard of judicial review, reasoning that the amendment could not satisfy even the minimal level of scrutiny. *Id.* at 632, 116 S.Ct. 1620. It explained that the amendment's "disqualification of a class of persons from the right to seek specific protection from the law is unprecedented in our jurisprudence.... A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.* at 633, 116 S.Ct. 1620.

21. *See Brooks v. Wright*, 971 P.2d 1025, 1028 (Alaska 1999) (stating that court looks to plain language, purpose, and framers' intent in interpreting constitution); *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999) (same); *Arco Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992) (same).

ically permit the government to treat them differently in other ways. It therefore does not preclude public employees with same-sex domestic partners from claiming that the spousal limitations in the benefits programs invidiously discriminate against them.

The state equal protection clause cannot override more specific provisions in the Alaska Constitution.[22] But the plaintiffs do not contend that the Marriage Amendment violates Alaska's equal protection clause. They argue not that they have a right to marry each other, but that the benefits programs discriminate against them by denying them benefits that the programs provide to others who, plaintiffs claim, are similarly situated.

Because the Marriage Amendment does not resolve this appeal, we turn to the merits of plaintiffs' equal protection arguments.

## C. Challenge to the Spousal Limitations Under the Equal Protection Clause of the Alaska Constitution

■ Article I, section 1 of the Alaska Constitution "mandates 'equal treatment of those similarly situated;' it protects Alaskans' right to non-discriminatory treatment more robustly than does the federal equal protection clause."[23] "We have long recognized that [this clause] affords greater protection to individual rights than the United States Constitution's Fourteenth Amendment."[24]

■ "To implement Alaska's more stringent equal protection standard, we have adopted a three-step, sliding-scale test that places a progressively greater or lesser bur-

den on the state, depending on the importance of the individual right affected by the disputed classification and the nature of the governmental interest at stake...."[25]

### 1. The benefits programs' distinctions between same-sex and opposite-sex domestic partners

■ A person or group asserting an equal protection violation must demonstrate that the challenged law treats similarly situated persons differently.[26] Absent disparate treatment of similarly situated persons, the law as applied to the aggrieved group does not violate the group's right to equal protection.[27] We first consider whether, as the municipality contends, there is no evidence of differential treatment, making it unnecessary to engage in a sliding-scale analysis.[28]

The plaintiffs assert that the defendant governments treat same-sex and opposite-sex couples differently. The defendants argue that their programs differentiate on the basis of marital status, not sexual orientation or gender. The municipality asserts that all married employees can confer benefits on their spouses, and no unmarried employees can confer benefits on their partners. It therefore argues that it treats same-sex couples no differently than any other unmarried couples, and that there is consequently no basis for an equal protection claim. Several courts examining similar programs have reached this conclusion.[29]

We must therefore decide whether there is a classification that results in different treatment for similarly situated people.

---

**22.** Cf. Bess v. Ulmer, 985 P.2d 979, 988 n. 57 (Alaska 1999) ("[A] specific amendment controls other more general [constitutional] provisions with which it might conflict."); ANTIEAU, supra note 18, § 2.16, at 27–28.

**23.** State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc., 28 P.3d 904, 909 (Alaska 2001) (footnote omitted) (quoting Alaska Pac. Assurance Co. v. Brown, 687 P.2d 264, 271 (Alaska 1984)).

**24.** Malabed v. North Slope Borough, 70 P.3d 416, 420 (Alaska 2003); see also Stanek v. Kenai Peninsula Borough, 81 P.3d 268, 272 & n. 15 (Alaska 2003).

**25.** Malabed, 70 P.3d at 420–21.

**26.** Alaska Inter–Tribal Council v. State, 110 P.3d 947, 966 (Alaska 2005); Lawson v. Helmer, 77 P.3d 724, 728 (Alaska 2003).

**27.** Lawson, 77 P.3d at 728; Brandon v. Corr. Corp. of Am., 28 P.3d 269, 275–76 (Alaska 2001).

**28.** Cf. Shearer v. Mundt, 36 P.3d 1196, 1199 (Alaska 2001).

**29.** Beaty v. Truck Ins. Exch., 6 Cal.App.4th 1455, 8 Cal.Rptr.2d 593, 596–97 (1992); Hinman v. Dep't of Pers. Admin., 167 Cal.App.3d 516, 213 Cal.Rptr. 410, 416 (1985); Ross v. Denver Dep't of Health & Hosps., 883 P.2d 516, 519 (Colo.App. 1994); Phillips v. Wisconsin Pers. Comm'n, 167 Wis.2d 205, 482 N.W.2d 121, 129 (App.1992).

■ We agree with the plaintiffs that the proper comparison is between same-sex couples and opposite-sex couples, whether or not they are married. The municipality correctly observes that no unmarried employees, whether they are members of same-sex or opposite-sex couples, can obtain the disputed benefits for their domestic partners. But this does not mean that these programs treat same-sex and opposite-sex couples the same. Unmarried public employees in opposite-sex domestic relationships have the opportunity to obtain these benefits, because employees are not prevented by law from marrying their opposite-sex domestic partners.[30] In comparison, public employees in committed same-sex relationships are absolutely denied any opportunity to obtain these benefits, because these employees are barred by law from marrying their same-sex partners in Alaska or having any marriage performed elsewhere recognized in Alaska. Same-sex unmarried couples therefore have no way of obtaining these benefits, whereas opposite-sex unmarried couples may become eligible for them by marrying. The programs consequently treat same-sex couples differently from opposite-sex couples.[31]

### 2. Intent to discriminate

The state argues that an intent to discriminate is, or should be, an essential element of a state equal protection claim in Alaska. Both defendants contend that there was no discriminatory intent, or evidence of animus against gays and lesbians. Plaintiffs respond that Alaska's equal protection clause does not require a showing of discriminatory intent.

■ We need not resolve this dispute here because we conclude that the benefits programs are facially discriminatory. When a "law *by its own terms* classifies persons for different treatment," this is known as a facial classification.[32] And when a law is discriminatory on its face, "the question of discriminatory intent is subsumed by the determination that the classification established by the terms of the challenged law or policy is, itself, discriminatory."[33]

To determine whether the benefits programs make a facial classification, we must therefore examine the meaning of the term "spouse." The United States Supreme Court, in *Personnel Administrator v. Feeney*, considered whether a state statute granting a hiring preference to veterans violated equal protection on the basis of gender.[34] The Court concluded in part that the statute was gender-neutral because the "definition of 'veterans' in the statute ha[d] always been neutral as to gender" and that "Massachusetts ha[d] consistently defined veteran status in a way that ha[d] been inclusive of women who ha[d] served in the military...."[35]

But unlike the neutral definition of "veteran" in *Feeney*, Alaska's definition of the legal status of "marriage" (and, hence, who can be

---

**30.** Some heterosexual couples, such as consanguineous couples, are also prohibited from marrying and are consequently prevented from obtaining benefits. But in those instances, the relationship itself is illegal, not merely the marriage. AS 11.41.450 classifies incest as a class C felony. No Alaska statute criminalizes homosexual relationships or homosexual conduct between consenting adults, nor could it. *See Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). Moreover, as discussed below, just because some other, smaller group of people is also excluded does not mean that the plaintiffs here cannot have a valid claim.

**31.** *See Tanner v. Oregon Health Scis. Univ.*, 157 Or.App. 502, 971 P.2d 435, 442–43, 447 (1998) (determining that denial of employment benefits to unmarried domestic partners of employees had "disparate impact" on homosexuals).

**32.** John E. Nowak & Ronald D. Rotunda, Constitutional Law § 14.4, at 711 (7th ed.2004) (emphasis added).

**33.** *Hamlyn v. Rock Island County Metro. Mass Transit Dist.*, 986 F.Supp. 1126, 1133 (C.D.Ill. 1997); *see also Cook v. Babbitt*, 819 F.Supp. 1, 14 (D.D.C.1993) ("In cases where a law or regulation makes an explicit reference to a suspect characteristic, purposeful discrimination is self-evident, and the measure is subject to challenge on its face without any evidentiary inquiry into the motives of the relevant government actors.").

**34.** *Personnel Adm'r v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

**35.** *Id.* at 275, 99 S.Ct. 2282.

a "spouse") excludes same-sex couples.[36] By restricting the availability of benefits to "spouses," the benefits programs "by [their] own terms classif[y]" same-sex couples "for different treatment."[37] Heterosexual couples in legal relationships have the opportunity to marry and become eligible for benefits. In comparison, because of the legal definition of "marriage," the partner of a homosexual employee can never be legally considered as that employee's "spouse" and, hence, can never become eligible for benefits. We therefore conclude that the benefits programs are facially discriminatory.[38]

The next question is whether the disparate treatment is permitted under the sliding-scale analysis for equal protection challenges in Alaska.[39]

### 3. Sliding-scale analysis under the Alaska Constitution

■ Having resolved these preliminary issues by determining (1) that it cannot be said as a matter of law that the benefits programs do not treat public employees with same-sex domestic partners differently, and (2) that the benefits programs are facially discriminatory, we turn to the three-step, sliding-scale analysis applicable to equal protection challenges under the Alaska Constitution. This approach involves the following process:

First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review. . . . Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.

Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. Once again, the state's burden will differ in accordance with the determination of the level of scrutiny under the first stage of analysis. At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.[40]

The plaintiffs advance four alternative arguments to support their equal protection challenge to the spousal limitation in the benefits programs. The first three ask us to apply a heightened level of scrutiny because the programs allegedly (1) discriminate on the basis of sexual orientation; (2) discriminate on the basis of gender; or (3) significantly burden at least one of several important personal interests. The plaintiffs alternatively contend that the programs cannot withstand even the minimum level of scrutiny, either because the governmental interests advanced are not legitimate, or because the eligibility restrictions do not bear

---

**36.** Alaska Const. art. I, § 25 ("To be valid or recognized in this State, a marriage may exist only between one man and one woman.").

**37.** *See* NOWAK & ROTUNDA, *supra* note 32, § 14.4, at 711.

**38.** We recognize that the benefits programs became discriminatory only after the legislature acted in 1996 and 1998 and the electorate adopted the Marriage Amendment in 1998. But, in our view, allowing a discriminatory classification to remain in force is no different than giving it the force of law in the first place.

**39.** In the case of a facial classification, "there is no problem of proof and the court can proceed to test the validity of the classification by the appropriate standard." NOWAK & ROTUNDA, *supra* note 32, § 14.4, at 711.

**40.** *Matanuska–Susitna Borough Sch. Dist. v. State,* 931 P.2d 391, 396–97 (Alaska 1997) (quoting *Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 269–70 (Alaska 1984)).

a fair and substantial relationship to advancing those interests.

Because we conclude that the benefits programs cannot survive minimum scrutiny, we need not address plaintiffs' alternative arguments.

### a. Nature of plaintiffs' interests: level of scrutiny

The first step of our analysis requires us to determine what weight to give the individual interests affected by the benefits programs.[41] Plaintiffs contend that the spousal limitations significantly burden important personal interests, such as the right to intimate association, and are therefore subject to heightened scrutiny. But because minimum scrutiny is sufficient to resolve this case, we do not need to decide whether the plaintiffs' interests are "important" or whether a "fundamental right" is affected.[42] Government action affecting an economic interest receives minimum scrutiny,[43] and the employment benefits at issue here are undeniably economic.

### b. The governmental interests and the relationship between those interests and the means chosen to advance them

The second step of the sliding-scale analysis requires us to consider the governmental interests advanced by a challenged law.[44] Under minimum scrutiny, these interests need only be legitimate.[45] The third step requires us to evaluate the means chosen to advance the interests identified from the second step. Minimum scrutiny requires a "fair and substantial relation" between the means (i.e., the classification) and the "object of the legislation."[46]

The state and the municipality contend that they have three legitimate interests—cost control, administrative efficiency, and promotion of marriage—in limiting employment benefits to spouses and dependent children. We must therefore consider whether these interests are legitimate and, if so, whether the classification bears a fair and substantial relationship to those interests.

**Cost control.** The state and the municipality argue that cost control is a primary purpose of limiting the availability of benefits to spouses of married employees. The state explains that it must offer health insurance to attract and retain a qualified work force and that "the legislature should be entitled to take reasonable measures to control the cost of that offering." As the number of program participants increases, so does the cost.

The state also asserts that the legislature "wanted to limit participation to that small group in a truly close relationship with the employee." The municipality asserts that it decided "to limit employee benefits to a small, readily ascertainable group of individuals closely connected to the employee." These assertions indicate to us that the governmental interest here is more specific than just "cost control." Indeed, if the governments were interested in simply saving money, the companion goal of promoting marriage would seem to do the opposite. As the benefits programs succeed in convincing couples to marry or to stay married, the governments have to provide benefits to more people. This apparent tension between cost control and promotion of marriage can be harmonized by more appropriately describing the governments' interest in cost control as an interest in controlling costs by limiting benefits to those people in "truly close relationship[s]" with or "closely connected" to the employee.

---

**41.** *Id.* at 396.

**42.** *Malabed v. North Slope Borough,* 70 P.3d 416, 421 (Alaska 2003) (applying "close" scrutiny to enactment affecting "important" interest); *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.,* 28 P.3d 904, 909 (Alaska 2001) (observing that "strict" scrutiny is applied to enactments affecting "fundamental rights").

**43.** *Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1130 (Alaska 1999).

**44.** *Planned Parenthood,* 28 P.3d at 909.

**45.** *Matanuska–Susitna Borough,* 931 P.2d at 396–97 (quoting *Alaska Pac. Assurance,* 687 P.2d at 269–70).

**46.** *Planned Parenthood,* 28 P.3d at 911 (quoting *Isakson v. Rickey,* 550 P.2d 359, 362 (Alaska 1976)).

We assume that limiting benefit programs to those in truly close relationships with the employee is a legitimate governmental goal. But we do not see how an absolute exclusion of same-sex domestic partners from being eligible for benefits is substantially related to this interest. Many same-sex couples are no doubt just as "truly close[ly] relat[ed]" and "closely connected" as any married couple, in the sense of providing the same level of love, commitment, and mutual economic and emotional support, as between married couples, and would choose to get married if they were not prohibited by law from doing so. Although limiting benefits to "spouses," and thereby excluding all same-sex domestic partners, does technically reduce costs, such a restriction fails to advance the expressed governmental goal of limiting benefits to those in "truly close relationships" with and "closely connected" to the employee.

**Administrative efficiency.** The state and the municipality argue that the need to efficiently administer the benefits programs justifies the spousal limitations. They argue that marriage provides a bright-line distinction that is easily applied, and that allowing employees to designate beneficiaries other than spouses will make it more difficult to administer the programs. The director of the benefits section of the Alaska Division of Retirement and Benefits explained during deposition the potential administrative difficulties that could arise if employees were allowed to designate benefits recipients other than spouses. She discussed theoretical burdens of determining who other than a spouse might be eligible for coverage. The municipality anticipates difficulty in deciding how long a same-sex relationship must last, whether the partners must reside in the same house, whether the relationship must be of a sexual nature, and when the relationship ends.

██ We have recognized that administrative efficiency is a legitimate governmental interest.[47] There is no doubt that making a less-clearly-defined (compared to spouses) category of persons eligible for employment benefits would create administrative burdens. But Alaska's Equal Protection Clause requires more than just a rational connection between a classification and a governmental interest; even at the lowest level of scrutiny, the connection must be *substantial*.[48]

It is significant that other agencies, political subdivisions, and states provide, or have provided, employment benefits to their employees' same-sex domestic partners. The state does not dispute the plaintiffs' contention that the University of Alaska does or did so and that it adopted qualifying criteria.[49] Likewise, other states [50] and municipalities,[51]

47. *Wilkerson v. State, Dep't of Health & Soc. Servs.*, 993 P.2d 1018, 1024 (Alaska 1999); *State v. Albert*, 899 P.2d 103, 115 (Alaska 1995).

48. *See Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976) (approving of "less speculative, less deferential, more intensified means-to-end inquiry" for traditional rational basis test).

49. Under the university's plan, an employee and the employee's partner submit an affidavit stating that they are financially interdependent partners and meet certain criteria of commitment and dependency. They must meet eight criteria including: having an exclusive personal relationship with each other for at least the last twelve consecutive months and an intention to continue the relationship indefinitely; residing together at the same primary residence for at least the last twelve consecutive months and intending to reside together indefinitely; considering themselves members of each other's immediate family; being responsible for each other's common welfare; and sharing financial obligations. They must also attest that they meet at least five of a second set of eight criteria, including: jointly purchasing or leasing real property; jointly owning an automobile; sharing a joint bank or credit account; naming each other as life insurance beneficiaries; and naming each other as primary beneficiaries in each other's wills. UNIVERSITY OF ALASKA, *Explanation of Availability of Benefits Based on Financially Interdependent Relationship*, at http://info.alaska. edu/hr/forms/PDF/B140–FIPExplanation. pdf (last visited June 13, 2003).

50. *E.g.*, CAL. GOV'T CODE § 22818, *amended by* 2005 Cal. Legis. Serv. 418 (West); OR. ADMIN. R. 101–015–0005(c); WASH. ADMIN. CODE § 182–12–260. A more complete list of states that provide health benefits to domestic partners can be found in a database maintained by the Human Rights Campaign. The database can be accessed through the organization's website at http://www.hrc.org (last visited October 21, 2005).

51. According to the Human Rights Campaign's database, 130 cities and counties offer domestic partner benefits. As of October 21, 2005, the cities and counties included, for example, Atlan-

including the City and Borough of Juneau,[52] offer the same health benefits to domestic partners, per their eligibility standards, that they offer to married couples.

We do not assume, as plaintiffs assert, that the state and the municipality can simply adopt the methodology the University of Alaska adopted to administer its programs. The state has many more employees than the university. Nonetheless, that many other agencies, municipalities, and states offer employment benefits to their employees' same-sex domestic partners suggests that the governments' legitimate administrative concerns can be satisfied. The availability of these benefits elsewhere persuades us that administrative difficulties are not an insurmountable barrier to providing benefits if our constitution requires that they be provided. We therefore conclude that the absolute exclusion of same-sex couples is not substantially related to the goal of maximizing administrative efficiency.

**Promotion of marriage.** The state and municipality assert that they have a legitimate interest in the promotion of marriage. To support this assertion, the municipality points to "the ancient cultural and legal status of marriage" and the place of a marriage between one man and one woman as "the historic foundation of society." Amicus curiae Alaska Catholic Conference also contends that the promotion of marriage is a legitimate state interest. It cites in support several United States Supreme Court decisions that have recognized the right to marry as "involv[ing] interests of basic importance in our society."[53] The Supreme Court has also

explained that "marriage is a social relation subject to the state's police power."[54]

We have never considered whether the promotion of marriage is a valid governmental interest.

Plaintiffs argue that whether or not the promotion of marriage is a legitimate governmental interest, the state is not truly interested in promoting marriage, because, if it were, it would not have prevented gays and lesbians from entering into married relationships. This argument has little merit. The state rightly argues that just because the legislature did not want to promote same-sex marriage does not mean it did not have a sincere interest in promoting "traditional" marriage.

Plaintiffs also challenge the legitimacy of any interest in promoting marriage. They argue that the state and municipality "may not assert an interest in promoting married relationships for its own sake." They claim that the government "may not favor a class simply because it favors the class," and that discrimination is never a legitimate interest. That proposition is certainly correct, but the promotion of marriage in and of itself is not necessarily discriminatory. And it is not irrational. Among other things, it can encourage family stability (an undeniably valid public goal), as the Alaska Catholic Conference argues.

As to this issue, plaintiffs' true challenge is to the decision to promote family stability among opposite-sex couples but not among same-sex couples. They argue that the social good from family stability in same-sex relationships is just as important and valu-

ta, Broward County, Chicago, Denver, and New York City. *See* Atlanta, Ga., Code of Ordinances § 2–858; Broward County, Fl., Code § 16 1/2–156; Chicago, Ill., Municipal Code ch. 2–152–072; Denver, Co., Rev. Municipal Code § 18.321(4)–18.328; New York City, N.Y., Administrative Code § 3–244(f).

**52.** *See* http://www.jun eau.lib.ak.us/cbj/ risk_management/ pdfs/2005/Enrollment Guide2005.pdf (last visited June 6, 2005).

**53.** *Boddie v. Connecticut,* 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *see also Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (describing marriage as

"one of the vital personal rights essential to the orderly pursuit of happiness" by free people); *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) ("one of the basic civil rights of man"); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) ("essential to the orderly pursuit of happiness").

**54.** *Loving,* 388 U.S. at 7, 87 S.Ct. 1817; *Maynard v. Hill,* 125 U.S. 190, 205, 8 S.Ct. 723, 31 L.Ed. 654 (1888) ("Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature.").

able as the social good from stable opposite-sex relationships. Assuming plaintiffs' argument is correct, it would not establish that an interest in promoting marriage is not legitimate. Given the social benefits potentially inherent in marriage and the Supreme Court's statement that marriage is subject to state regulation,[55] we conclude that the promotion of marriage is at least a legitimate governmental interest.

We accept the state's contention that providing employment benefits to spouses of its employees may encourage persons to marry or stay married. Such benefits are financially valuable and their availability may be an important or even critical factor to persons deciding whether to marry. But the question here is whether the means chosen to advance the interest are substantially related to the governments' interest.

The first part of the chosen means—providing a benefit to spouses—is directly related to advancing the marriage interest. But the second part of the chosen means—restricting eligibility to persons in a status that same-sex domestic partners can never achieve—cannot be said to be related to that interest. There is no indication here that denying benefits to public employees with same-sex domestic partners has any bearing on who marries. There is no indication here that granting or denying benefits to public employees with same-sex domestic partners causes employees with opposite-sex domestic partners to alter their decisions about whether to marry. There is no indication here that any of the plaintiffs, having been denied these benefits, will now seek opposite-sex partners with an intention of marrying them. And if such changes resulted in sham or unstable marriages entered only to obtain or confer these benefits, they would not seem to advance any valid reasons for promoting marriage. In short, there is no indication that the programs' challenged aspect—the denial of benefits to all public employees with same-sex domestic partners—has any rela-tionship at all to the interest in promoting marriage. To repeat: making benefits available to spouses may well promote marriage; denying benefits to the same-sex domestic partners who are absolutely ineligible to become spouses has no demonstrated relationship to the interest of promoting marriage.

The municipality raises several other arguments that justify brief response. It asserts that it can properly limit eligibility because the Marriage Amendment sanctions the marriage relationship. We discussed above the effect of the Marriage Amendment and rejected a contention that it altogether forecloses plaintiffs' equal protection claims. See Part III.B. Moreover, the marriage relationship sanctioned by the amendment cannot justify unequal treatment unless the means relate to the purpose. No one has suggested that the Marriage Amendment would permit the municipality to double the pay of only its married employees or permit it to hire only married persons.

The municipality seems to imply that accepting the plaintiffs' arguments would require defendants to extend marriage benefits to members of "other non-traditional marriages," such as persons in polygamous relationships. But polygamy is illegal in Alaska,[56] as are incestuous relationships.[57] Even though same-sex domestic relationships are not marriages in Alaska,[58] they are not illegal. And, following *Lawrence v. Texas,* they could not be made illegal.[59] Nothing we hold here would require public employers to extend to members of polygamous or incestuous relationships the employment benefits they provide to their employees' spouses.

### d. Equal protection conclusion

▆▆▆▆ The governmental interests of cost control, administrative efficiency, and promotion of marriage are legitimate, but the absolute denial of benefits to public employees with same-sex domestic partners is not

**55.** *See Loving,* 388 U.S. at 7, 87 S.Ct. 1817.

**56.** AS 11.51.140.

**57.** AS 11.41.450.

**58.** Alaska Const. art. I, § 25.

**59.** *Lawrence v. Texas,* 539 U.S. 558, 567, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (holding that states may not criminalize private, consensual homosexual relations).

substantially related to these governmental interests.

In this case, because the programs at issue govern the governments' actions in their specific capacities as public employers, rather than in their broader governmental capacities, the programs' marital preferences would have difficulty meeting the means-to-end fit requirement unless they had a fair and substantial relationship to the governments' roles as public employers. When the state or a political subdivision acts in this capacity, it is subject to the overarching principles set out in article I, section 1, and article XII, section 6, of the Alaska Constitution. Those sections guarantee all Alaskans "the rewards of their own industry" and require public employment to be based on merit.[60] Programs allowing the governments to give married workers substantially greater compensation than they give, for identical work, to workers with same-sex partners cut against these constitutional principles yet further no legitimate goal of the governments as public employers. However legitimate these programs' broader policy goals may be, then, the means they employ would not be fairly and substantially related to furthering those goals.

We therefore conclude, applying minimum scrutiny, that the challenged programs violate the individual plaintiffs' right to equal protection of the law.

### D. *Trombley v. Starr–Wood Cardiac Group* Does Not Control Here.

The state argues that comments we made in *Trombley v. Starr–Wood Cardiac Group, P.C.*[61] "should be dispositive" of the constitutional issues now before us.

*Trombley* did not address constitutional issues. The Trombleys appealed the dismissal of their malpractice claims arising out of Barbara Trombley's medical care. One issue was whether Dale Trombley could bring a loss-of-consortium claim. While Barbara was being treated, she was cohabiting with Dale Trombley but was married to Keith Bradick. Some months later she divorced Bradick and married Dale Trombley. The superior court rejected Dale's consortium claim on summary judgment. In considering Dale's appellate contention that an unmarried cohabitant could claim loss of consortium, we said that "[w]hether spousal consortium claims should be extended to unmarried cohabitants as a general matter is not an easy issue to resolve. *There are reasonable arguments on both sides.*"[62] We did not decide whether, "as a general matter," unmarried cohabitants could ever claim loss of consortium. We instead affirmed the denial of the consortium claim because one of the cohabitants was actually married to someone else when the alleged malpractice occurred.[63]

The state contends that it follows from our quoted characterization of the argument limiting consortium claims to legal spouses as "reasonable" that the legislature's choice in denying employment benefits to unmarried cohabitants must also be "reasonable and hence constitutional." It asserts that both areas "concern simply the right to receive money."

And of course, because they were not a same-sex couple, nothing prohibited Dale and Barbara from marrying as soon as Barbara divorced her prior spouse. Plaintiffs correctly observe that this court there "analyzed distinctions between married heterosexual couples and unmarried heterosexual couples, who *can* marry. It did not analyze distinctions between heterosexual couples [and] lesbian and gay couples, who *cannot* marry." (Emphasis in original.) That we stated in dictum that it was "reasonable" not to allow consortium claims by unmarried cohabitants does not mean that the government can treat unmarried couples of the same sex differently than it treats unmarried couples of the opposite sex.

---

**60.** Alaska Const. art. I, § 1 ("This constitution is dedicated to the principle[ ] that all persons have a natural right to ... the enjoyment of the rewards of their own industry...."); Alaska Const. art. XII, § 6.

**61.** *Trombley v. Starr–Wood Cardiac Group, P.C.*, 3 P.3d 916 (Alaska 2000).

**62.** *Id.* at 923 (emphasis added).

**63.** *Id.*

### E. Remedy

Plaintiffs do not contend that finding an equal protection violation would require that the benefits programs themselves must end; they simply seek the same benefits and opportunities potentially available to opposite-sex couples. Only the spousal limitations in the programs are unconstitutional, and they are invalid only to the extent they deny benefits to persons who are absolutely precluded from becoming eligible for those benefits, even though their domestic relationship is not illegal.

Therefore, one possible remedy would be to give the state and the municipality a reasonable opportunity to adopt standards for making these benefits available to persons deemed eligible. Many other public employers now have programs that may be useful models,[64] and private employers may also.[65] Having held unconstitutional the exclusion of same-sex couples from access to civil marriage, the Supreme Judicial Court of Massachusetts in *Goodridge v. Department of Public Health*, vacated the department's summary judgment and remanded for entry of judgment consistent with its opinion. But it stayed entry of judgment on remand for 180 days to permit the legislature "to take such action as it may deem appropriate in light of this opinion."[66]

Because the parties have not addressed the issue of remedy, or how the state and municipality may comply, we invite supplemental briefing on this issue.

## IV. CONCLUSION

We conclude that the public employers' spousal limitations violate the Alaska Constitution's equal protection clause. We therefore VACATE the judgment below. After hearing from the parties about the issue of remedy, we will REMAND. Until we resolve the issue of remedies, the disputed benefits programs remain in effect.

---

64. *See supra* notes 49–52.

65. According to the Human Rights Campaign's database, 247 Fortune 500 companies offer domestic partner benefits. The database can be accessed through the organization's website at http://www.hrc.org (last visited October 21, 2005).

66. *Goodridge v. Dep't of Pub. Health*, 440 Mass. 309, 798 N.E.2d 941, 969–70 (2003); *see also*

*Baker v. State*, 170 Vt. 194, 744 A.2d 864, 886 (1999). In *Baker*, the Vermont Supreme Court deferred to the prerogatives of the legislature "to craft an appropriate means of addressing this constitutional mandate." It therefore left the current statutory scheme in effect "for a reasonable period of time to enable the Legislature to consider and enact implementing legislation in an orderly and expeditious fashion." *Id.* at 887.